CHARLES D. ROBBINS ET AL., PARTNERS TRADING AS
C. D. ROBBINS & COMPANY, APPELLANTS, v. PASSAIC
NATIONAL BANK AND TRUST COMPANY, RESPOND-
ENT.

PASSAIC NATIONAL BANK AND TRUST COMPANY, APPEL-
LANT, v. CHARLES D. ROBBINS ET AL., PARTNERS
TRADING AS C. D. ROBBINS & COMPANY, RESPOND-
ENTS.

Argued February 12, 1932—Decided May 16, 1932.

For Charles D. Robbins & Company, *Arthur T. Vanderbilt.*

For the Passaic National Bank and Trust Company, *Corbin & Harty.*

The opinion of the court was delivered by

LLOYD, J. The plaintiffs constituted a firm of stock brokers in the city of New York, and had in their employ as manager

one George Bedell, who, in addition to his relation as manager, carried an individual trading account with the firm. He later became a member of the partnership.

In March, 1928, Bedell established banking relations with the defendant bank through its vice-president, opened accounts therein and received financial accommodation. Upon various statements to the plaintiff to the effect that the firm was indebted to the defendant bank, a series of checks were drawn by Robbins & Company to the order of the bank and delivered to the bank, as a rule by Bedell personally. The proceeds of the checks so drawn were at Bedell's direction credited to the account of Bedell or to the accounts of his nominees in the bank and later drawn out by him.

The plaintiffs on discovering what was taking place, demanded repayment of these funds by the bank, and failing to receive the same, brought this action to recover them. The trial resulted in a verdict and judgment in favor of the plaintiffs in the sum of $82,877.37. From the judgment so rendered both parties appeal.

The claim of the plaintiffs was for a much larger sum and it is for the refusal of the trial court to direct a verdict in their favor for that larger sum that their appeal is taken.

The grounds relied on for reversal in the bank's appeal are that the trial court should have controlled the case by nonsuit or by direction of a verdict in its favor; also that there was error in the rulings during the progress of the trial. Deeming that it will conduce to clearness to first consider the defendant's appeal, that branch of the case will be here taken up.

There can be no doubt that the checks drawn to the order of the bank were by it endorsed and the proceeds diverted to the personal use of Bedell, and thus became a misappropriation of funds belonging to the plaintiffs. The bank's contention on the trial and here is that there was an express, implied and apparent authority in Bedell to authorize the bank to make this application of the moneys so received, and that for this reason a nonsuit or direction of a verdict in its favor should have been granted.

The learned trial judge, deeming that there was no proof of such agency exhibited by the testimony, denied the application for nonsuit or direction and later refused to submit this question to the jury.

Our examination of the record convinces us that these rulings were correct. There can be no doubt that as a fundamental proposition of law a check drawn to the order of a bank precludes the diversion of the proceeds of such check to a use other than that of the drawer and such diversion can only be justified by the proof of authority from the drawer to so divert. *Sims* v. *United States Trust Co.,* 103 *N. Y.* 472; *Graham* v. *Southington Trust Co.,* 99 *Conn.* 494. Part of the misapplication of the funds occurred during the period that Bedell was plaintiffs' manager and part after he became a partner. But it is equally well settled that a partner may not use partnership funds for his private uses without the sanction of his co-partners. 3 *Kent Com.* 42; *Dennie Metal Manufacturing Co.* v. *Fidelity Union Trust Co.,* 99 *N. J. L.* 365, and the numerous cases cited in the brief of the plaintiff-appellant establish this principle beyond cavil or question.

Though the motions made in the court below for nonsuit and direction on the part of the defendant were partial only and did not present the case in the best form for consideration, we have treated them as effective for the purpose, and have concluded that under the facts as proven the court could not direct the jury to render a verdict in favor of the defendant, either for the reasons above given or for the additional reasons now urged that the case was controlled by chapter 30 of the laws of 1927 concerning the liability of those participating in breaches of fiduciary obligations or that the bank was a holder for value. No request was submitted to the trial court dealing with the effect of the statute and we can conceive of no basis upon which it could be invoked, and counsel for the bank has given us no reason of his own. It is obvious also that the bank was not a holder for value under the Negotiable Instruments act. It gave nothing for the checks; it simply collected them and misapplied the proceeds.

Coming now to the first question earnestly argued by the defendant-appellant that the court should have submitted to the jury whether there was any authority, real or apparent, in Bedell to procure from the bank the application of the proceeds of the checks to his own use, we have this situation: The dealings of Bedell covered a series of transactions, totaling in all thirty-four checks. These were all drawn by the plaintiffs to the order of the bank and delivered to it. The initial transaction was an application by Bedell to his friend, VanHouten, a vice-president of the bank, for a federal reserve check for $3,000. VanHouten acceded to the request by advancing $1,200 of his personal funds which, added to a deposit of $1,800 already in the bank to Bedell's credit, aggregated the amount requested, and sent a federal reserve check for $3,000 to Bedell. Bedell gave in return checks to cover, one of which was in the sum of $1,800 signed by the plaintiffs, Bedell having represented to the plaintiffs that it represented the proceeds of sales of securities made on behalf of the bank. The proceeds of this check were then placed to Bedell's personal account. This was followed by other transactions of a similar character covering a period of approximately a year and a half until the total number of thirty-four checks had been so given and all upon the specious statements of Bedell that they represented legitimate tranasctions of the firm for the bank.

From beginning to end the bank dealt wholly with Bedell. It had no transactions with the plaintiffs. There was no implied authority in Bedell to tender the checks in payment of his own indebtedness; there was no actual authority as the evidence abundantly proved; and there was no proof of apparent authority except the acts of Bedell himself. Under these circumstances the transactions in their very incipiency began with the palpable misapplication of the funds of the plaintiffs and they so continued to the end of the chapter. The bank had no authority to divert the funds placed in its hands to the private use of Bedell, the manager, or to Bedell, the partner, and when it did so it made itself liable to account to the plaintiffs for the proceeds of the checks which it had received.

There being no evidence from which the jury could infer an authority, either real or apparent, in Bedell to receive the proceeds of the checks, the trial court was right in refusing to submit this question to the jury.

In compliance with the bank's request the court did submit to the jury the question of whether the plaintiffs had so negligently failed to examine their own books and accounts to check up the conduct of Bedell and thereby obtain knowledge of his illegal transactions as to estop them from urging their claim against the bank. The body found against the defendant. We think the question was properly submitted and the finding of the jury thereon is conclusive on this appeal.

Taking up the appeal of the plaintiffs, it is first urged that the court erred in refusing to direct a verdict for the full amount of their claim, something over $170,000. In view of what has already been said respecting the submission of the plaintiffs' negligence in examining their own accounts, which submission we think was proper, it is unnecessary to comment further; that question being a proper one for the jury's consideration, essentially barred the plaintiffs' recovery either in the larger or lesser amount, if the jury's finding should be adverse to them.

It is also urged that the court erred in submitting to the jury, if it should find for the plaintiffs on the main issue, the question of whether two items representing checks, one for $75,000 and the other for $24,000, represented an actual loss to the plaintiffs. It seems that during the progress of Bedell's dealings with the bank the two checks were drawn by the plaintiffs and the proceeds paid to the defendant bank. There was proof that these checks represented no ultimate asset of the plaintiffs in the hands of the bank; that they were what is commonly called kiting transactions carried on to facilitate the ulterior purpose of exhibiting to stock exchange auditors a favorable state of Bedell's personal accounts with the firm. Plaintiffs contend that as a matter of bookkeeping the accounts show definitely that these sums of money reached the bank and should be accounted for, and

that therefore the court should declare as matter of law that the plaintiffs were entitled to recover them if the jury's finding be, as it was, in their favor on the question of liability.

Bookkeeping, of course, is a science requiring specialized knowledge. It may or may not, like abstract mathematics, be an exact science, but it is a subject requiring expert and trained knowledge, and the difficulty in dealing with this problem as a court question lies in the fact that experts on both sides were called to testify respecting the effect of these payments on the financial relations of the parties; one side testifying that they represented an actual loss to the plaintiffs through payments to the bank; the other that they represented no loss whatever. Under these circumstances the question became one for the jury and not for the court.

The judgment will be affirmed, on both appeals.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, KERNEY, JJ. 13.

*For reversal*—None.