## SACHS v. NEW JERSEY NAT. BANK & TRUST CO. et al.

District Court, D. New Jersey.
Sept. 24, 1936.

538

Henry Gottfried, of Newark, N. J., for plaintiff.

Harrison & Roche, of Newark, N. J., for defendants.

FORMAN, District Judge.

The Colonial Discount Company, Inc., hereafter called the Finance Company, is, or was, a corporation of New York. It engaged in the business of financing dealers in automobiles. Washington E. Carton was president of Chandler-Newark Motors, Inc., such a dealer. On December 28, 1927, he called at the office of the Finance Company and advised it that he had ordered nine automobiles, which had arrived in Newark from the Chandler Company. Sight drafts, with attached bills of lading, for the cars were in the Forest Hill Branch of the Broad & Market National Bank of Newark, N. J. This bank went through various changes of status, finally coming into the hands of the defendant Rogers, as receiver of the New Jersey National Bank & Trust Company, and for convenience hereinafter will be referred to as the Bank. He requested the Finance Company, in accordance with its arrangement for handling such wholesale transactions, to issue a check to the Bank in the sum of $12,183.14, the amount of the sight drafts. The Finance Company issued such a check payable to the Bank in payment of sight drafts covering the cars listed below and to enable Carton or his firm to receive the bills of lading. The cars are described as follows:

| | |
|---|---|
| One Royal 8, 5 passenger | — Serial No. 104621 |
| One Royal 8, 5 passenger | — Serial No. 103889 |
| One Royal 8, 5 passenger | — Serial No. 103869 |
| One Special De Luxe | — Serial No. 32453 |
| One Special De Luxe | — Serial No. 32097 |
| One De Luxe Metro | — Serial No. 180925 |
| One De Luxe Metro | — Serial No. 180926 |
| One Special De Luxe | — Serial No. 32467 |
| One De Luxe Metro | — Serial No. 180946 |

Upon the delivery of the check by the Finance Company to Carton he gave it conditional bills of sale covering the nine cars.

The purpose for which the check was issued was set forth in written instruction on a stub attached to it. Carton removed this stub before he delivered it to the Bank, and the Bank, after collecting the fund represented by the check, disposed of and applied it as directed by said Carton, without the knowledge or consent of the Discount Company. In so doing the only indicia of authority to direct the distribution of the fund was his possession of the check made out to the order of the Bank.

Prior to December 28, 1927, a sight draft in the sum of $5,191.87, being one of the three sight drafts for which the check had been issued, had been paid by the Bank, and the bills of lading accompanying the same had been surrendered by the Bank to Carton's firm. When the Bank received the check, it reimbursed itself for such payment by making balancing entries in the account of Carton's firm, and with the balance of the proceeds of the check took up the remaining sight drafts in the sums of $2,914.35 and $4,076.92, respectively. Plaintiff makes no claim with regard to the latter amounts.

The bills of lading accompanying the draft for $5,191.87 covered cars Nos. 103,889; 180,925; 180,926; and 180,946. As stated above, these had been surrendered to Cartons's firm before he obtained the check from the Finance Company. The cars themselves had been in the Newark Warehouse since September 6, 1927. On January 3, 1928, the Columbus Trust Company surrendered bills of lading for cars 180,926 and 180,946 and received a warehouse receipt therefor. On the same day the Montclair Trust Company surrendered the bill of lading for 180,925 and received a similar receipt. The warehouse receipts were negotiable, and through them title to these three cars passed to other persons. Such title was superior to that obtained by the Finance Company through its bills of sale. What transpired with regard to car 103,889 is unknown.

The Finance Company made claim against the Bank, its successors, and also presented its claim against the defendant receiver. It was always rejected. It assigned its claim to Leon Sachs, the plaintiff herein.

All of the above facts are stipulated by the parties.

The plaintiff contends that the fact that the check was drawn by the Finance Company to the Bank imported ownership of the fund in it and that the Bank was put on notice to make inquiry as to the purpose for which the check was intended; that the Bank was negligent in relying on Carton's

representations (or misrepresentations) without verifying them and the application of the funds by the Bank for its own reimbursement after it had released the bills of lading was a wrongful conversion of the Finance Company's funds; that such action by the bank permitted the conditional bills of sale delivered by Carton to the Finance Company to be rendered worthless to the loss of the Finance Company and the profit of the Bank.

The defendants contend that the Finance Company was dealing with a dishonest person (Carton) in a manner customarily used in dealing with honest persons and that Carton saw a loophole in the machinery which the Finance Company had set up to finance dealers in their handling of automobiles in so far as the purpose of the issuance of the check was to enable the dealers to receive bills of lading for the automobiles. In this case Carton received them, although the cars themselves remained in the warehouse until at least January 3, 1928, a week after the check had been issued. It contends that the mere fact that it surrendered the bills of lading prior to the issuance of the check had no causal effect from which flowed the damage to the Finance Company. In other words, it says that in effect it distributed the funds represented by the check just as the Finance Company intended that they should be distributed and that, because later on and no earlier than January 3, 1928, persons turned up possessed of the bills of lading which ultimately gave them title to the cars superior to that of the Finance Company through its conditional contract of sale was not an effect of any act committed by the Bank but came about entirely by reason of the fact that the system of the Finance Company was loose, in that it did not capture the bills of lading themselves into its own hands but permitted them to escape into the hands of Carton and thence into circulation. Therefore it submits that plaintiff cannot recover.

The issue thus raised is submitted on the stipulated facts above set forth.

■■■ Carton was in no way the agent of the Finance Company, and the Bank knew or should have known it. The check was made out to the Bank, and it must be conceded that in such case, when the Bank accepted the fund, it accepted the responsibility of an application of the fund strictly in accordance with the directions of the owner of the fund, the Finance Company.

The duty was distinctly upon the Bank to obtain from the Finance Company authority as to the disbursement of such funds and not to rely upon Carton's directions in such respect. Defendants point out that the amount of the check coincided with the aggregate amount of three sight drafts for cars to be delivered to Carton's firm. While this coincidence may seem to have furnished possible plausible grounds for the Bank to accept Carton's statement on face value, it did not actually absolve the Bank from looking directly to the maker of the check for specific instructions concerning the disposition of moneys it chose to accept from that maker. Robbins et al. v. Passaic National Bank & Trust Company, 109 N.J.Law, 250, 160 A. 418, 82 A. L.R. 1368. Such a burden is a justifiable incident to be carried by those holding themselves out to be in the banking business. Had Carton permitted the stub to remain on the check, but had altered it in a material manner so as to thwart the intent of the maker, the onus of loss due to such a forgery would fall upon the Bank. Here Carton abstracted the instructions under which the check was to be used. The Bank took Carton's instructions at its peril. In fact, the original instructions could not have been executed at the time the Bank accepted the check because there were no longer three sight drafts in the possession of the Bank, one having been taken up theretofore. It very well may be, as contended by defendants, that the Finance Company operated in a manner tending toward a hazard of its interests when it failed to place more secure safeguards about the bills of lading. But that is outside of the question here presented, which I conceive to be simply one dealing with the authority of a bank to dispose of funds deposited with it after its acceptance of those funds. May the Bank under any circumstances accept instructions concerning the disposition of that trust from persons other than the maker of the deposit or his authorized representative? Obviously, the answer must be "No." If business transactions are to be safe, banks must be held to the strictest accountability for such funds. The Bank here had no right to rely upon Carton's instructions as binding upon the Finance Company, maker of the check to its order, and I can agree only with the plaintiff that its failure to obtain proper authority for the disbursement of the funds made it liable for the loss subsequently sustained by the plaintiff.

The parties have agreed that, in the event that judgment is entered in favor of the plaintiff, it shall be limited as follows: "In the event any judgment shall be entered for the plaintiff herein, the same shall be limited to a maximum sum of Four Thousand Two Hundred Twenty-five Dollars and Twelve Cents ($4,225.12), together with lawful interest thereon from December 28, 1927 to June 10, 1932, the date when defendant Chester P. Rogers was appointed Receiver of said New Jersey National Bank and Trust Company of Newark by the Comptroller of the Currency of the United States of America, being One Thousand One Hundred Twenty-nine Dollars and Forty-three Cents ($1,129.43), a a total of Five Thousand Three Hundred Fifty-four Dollars and Fifty-five Cents ($5,354.55). In the event of a judgment for plaintiff in any sum, the judgment shall be in the form of a certification to Chester P. Rogers, Receiver of New Jersey National Bank and Trust Company of Newark, of the amount due to plaintiff, and shall be a direction to him to accept and to allow a claim to be proven in such sum as shall be found to be due, and to pay dividends thereon in the due course of his administration of this trust."

Judgment for the plaintiff will be entered in accordance with the conditions set forth in the last foregoing paragraph.