ERNESTINE NOAH, Appellant, v. THE BOWERY SAVINGS
BANK, Respondent.

Evidence — savings banks — action to recover deposits paid
to third party wrongfully in possession of depositor's bank
book — care and diligence required of bank to ascertain that
person receiving money is entitled thereto — burden of proof
upon bank — opinion evidence — when improperly admitted.

1. While it is no longer a valid objection to the expression of an
opinion by a witness that it is upon the precise question which the jury
are to determine, evidence of that character is only allowed when, from
the nature of the case, the facts cannot be stated or described to the
jury in such a manner as to enable it to form an accurate judgment
thereon, and no better evidence than such opinions is attainable. but
where the jury can form a proper conclusion after facts known only
to experts have been disclosed it is its province to draw the conclusion.

2. A savings bank cannot rely in making payment solely upon the
possession and presentation of the bank book of the depositor, but
must exercise ordinary care and diligence to ascertain that the person
receiving the money is entitled thereto. The burden is upon the
bank to prove this defense and a charge to the jury that the plain-
tiff must prove by a preponderance of evidence that the bank failed
to exercise the ordinary care which it was required to under the
circumstances of the case is erroneous.

3. A witness who had qualified as an expert was asked " whether
or not, in your opinion, if a depositor opens an account in her name
as ' Ernestine ' somebody or other, and a draft is presented signed
' Ernestina ' somebody or other, purporting to come from her, that
circumstance would tend to excite suspicion in the mind of the
ordinarily competent signature clerk? " Over objection and exception
the witness answered: " In my opinion it would not excite any
suspicion." Held, error; that it was for the jury to say whether the
clerks of the bank exercised care and whether, if reasonably prudent,
they should have been suspicious.

4. Questions to the effect whether it would excite suspicion in the
mind of an ordinarily competent test clerk that several withdrawals
were made within a short period on an account on which there had
been no previous withdrawals or where the whole of an account was
withdrawn under like conditions were improperly allowed.

Noah v. Bowery Savings Bank, 171 App. Div. 912, reversed.

(Argued December 3, 1918; decided January 14, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 24, 1915, affirming a judgment in favor of defendant entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Harold Nathan* and *Mortimer Brenner* for appellant. The trial court erred in charging that the burden of proving defendant's negligence was upon the plaintiff and in refusing to charge that there was no burden on the plaintiff to prove the defendant's negligence. (*Dowling* v. *Hasting*, 211 N. Y. 199; *Lerche* v. *Brasher*, 104 N. Y. 157; *Keteltas* v. *Myers*, 19 N. Y. 231; *Posner* v. *Rosenberg*, 149 App. Div. 272; *Allen* v. *W. S. Bank*, 69 N. Y. 314; *Gearns* v. *B. S. Bank*, 135 N. Y. 557; *Kummel* v. *G. S. Bank*, 127 N. Y. 488; *Mahon* v. *S. B. S. Inst.*, 175 N. Y. 69; *Kelley* v. *B. S. Bank*, 180 N. Y. 171; *Israel* v. *B. S. Bank*, 9 Daly, 507.) The court erred in refusing to charge that the plaintiff was not bound to show freedom from negligence and in permitting the introduction of testimony for the purpose of establishing negligence on the part of the plaintiff. (*Mahon* v. *S. B. S. Inst.*, 175 N. Y. 69; *Campbell* v. *S. S. Bank*, 114 App. Div. 337; *Ladd* v. *A. S. Bank*, 96 Me. 510; *Chase* v. *W. S. Bank*, 77 Conn. 295; *Brown* v. *M. R. S. Bank*, 67 N. H. 549; *N. I. & S. Co.* v. *W. & R. Co.*, 62 N. H. 163.) The court erroneously permitted defendant's expert witnesses to testify to the degree of competency and care exercised by the defendant and erroneously refused to permit plaintiff's experts to testify on the same questions. (*Bogart* v. *City of New York*, 200 N. Y. 379; *Ferguson* v. *Hubbell*, 97 N. Y. 507; *McCarragher* v. *Rogers*, 120 N. Y. 526; *Harley* v. *Buffalo Car Manufacturing Co.*, 142 N. Y. 31; *Dittman* v. *Edison E. L. Co.*, 144 App. Div. 632; *Dolan* v. *Herring-Hall-Marvin Safe Co.*, 105 App.

Div. 366; *Winters* v. *Naughton*, 91 App. Div. 80; *Cramer* v. *Slade*, 66 App. Div. 59; *Stoothoff* v. *Bklyn. H. R. R. Co.*, 50 App. Div. 585; *Green* v. *Hornellsville R. R. Co.*, 24 App. Div. 434.)

*George Coggill* for respondent. The trial court did not err in charging that the burden of proving defendant's negligence was upon plaintiff and in refusing plaintiff's request to charge that there was no burden on plaintiff to prove defendant's negligence. (*Hankowska* v. *B. S. Bank*, 155 App. Div. 694; *Israel* v. *B. S. Bank*, 9 Daly, 507.) The trial court should have directed a verdict for the defendant on the ground that the evidence established conclusively that it exercised due care in paying the drafts in question. The plaintiff was not entitled to have submitted to the jury the question of the defendant's negligence and was, therefore, not prejudiced by any charge on that issue made by the trial judge, even though it were erroneous. (*McKenna* v. *B. S. Bank*, 93 Misc. Rep. 135.) The rulings of the trial court in regard to expert testimony were correct. (*Finn* v. *Cassidy*, 165 N. Y. 584; *Thompson* v. *Jenks*, 179 N. Y. 20; *G. A. Ins. Co.* v. *N. Y. G. & El. Co.*, 103 App. Div. 310; *Wolfe* v. *Mosler Safe Co.*, 139 App. Div. 848; *Kelly* v. *B. S. Bank*, 180 N. Y. 171; *Campbell* v. *S. S. Bank*, 114 App. Div. 337.)

CRANE, J. On the 3d day of September, 1912, Ernestine Noah had to her credit in the Bowery Savings Bank the sum of two thousand three hundred sixty-four dollars and twenty-six cents ($2,364.26). The passbook issued to the plaintiff showing this amount on deposit had printed upon it the following rule:

" 13. Should any depositor lose his book, he is required to give immediate notice thereof to the Bank. Books must be presented to be written up before interest can

be drawn. All payments made to persons producing deposit books shall be deemed good and valid payments to depositors respectively."

The plaintiff's son, Sidney Noah, stole his mother's bank book and by forged orders drew out of this account two thousand dollars ($2,000) which he spent on himself. On September 3d, 1912, he presented to the bank the pass book and an order purporting to be signed by the plaintiff directing the bank to pay to Sidney Noah, or bearer, the sum of three hundred dollars ($300). On the 16th day of September, 1912, he again presented the bank book and another order, purporting to be signed by the plaintiff, directing the bank to pay to Sidney Noah or bearer the sum of five hundred dollars ($500), and on the 4th day of October, 1912, the order, presented with the bank book and apparently signed by the plaintiff, directed the bank to pay to Sidney Nichols, or bearer, the sum of one thousand two hundred dollars ($1,200). After certain questions were asked by the teller of Sidney Noah and the signature on the orders compared with the genuine signature in the possession of the bank; the money was paid to the son and wrongfully used by him.

Ernestine Noah claims that she never authorized these withdrawals, that her name was forged and that she never received the money. Sidney Noah was indicted for forgery, pleaded guilty and was sent to Elmira.

The bank having refused to pay these moneys to the plaintiff on demand, she has brought this action.

In her complaint she alleges the amount on deposit as above stated, her demand for the payment of two thousand dollars ($2,000) and the refusal of the defendant to pay it. The defendant by answer admits the deposit, the demand and its refusal to pay, and sets up the payments to Sidney Noah as a separate and complete defense. It may be doubtful whether the allegations of due care and diligence are sufficient as the defendant merely states

that Sidney Noah made correct answers to the questions asked of the depositor when the deposit was made and that the defendant exercised due diligence in examining the signature of said depositor. There is no rule of law, that I know of, which makes the asking of such specific questions and the examination of the signature a complete defense as a matter of law in all cases. Circumstances might require other things to be done to establish care and diligence. The defendant instead of pleading that it took care to do a specific thing should have pleaded that it did all things that a reasonably prudent person would have done under the circumstances and conditions presented. However, no question has been raised as to the pleadings and the trial proceeded upon the theory that the defendant in making payments to Sidney Noah was bound to exercise reasonable care.

The rule is well established that the bank cannot rely in making payment solely upon the possession and presentation of the bank book as stated in rule 13 above quoted, but must exercise ordinary care and diligence to ascertain that the person receiving the money is entitled to it. (*Kelley* v. *Buffalo Savings Bank*, 180 N. Y. 171.)

On the trial the judge satisfactorily charged this rule of law, making it quite clear and plain, but fell into error in charging that " the plaintiff has the burden of proof and must prove to your satisfaction by a preponderance of evidence that the bank failed to exercise the ordinary care which they were required to exercise under the circumstances of this case."

The action was for money which the defendant owed to the plaintiff. The debt was admitted. The defense was payment to a third party under such circumstances of care and diligence as to relieve the bank from liability. The burden, therefore, was upon the bank to prove this defense, and that it exercised due care and diligence in making payment to Sidney Noah. Payment in a case

like this is an affirmative defense to be proved by the party alleging it. (*Conkling* v. *Weatherwax,* 181 N. Y. 258; *Dowling* v. *Hastings,* 211 N. Y. 199; *Lerche* v. *Brasher,* 104 N. Y. 157.)

There is no fact in this action which should make it an exception to this general rule.

The authorities involving the question of payment by savings banks also indicate that the burden of proving care and diligence is upon the defendant pleading it. In *Gearns* v. *Bowery Savings Bank* (135 N. Y. 557, 562) it was said: " It is well settled, however, that payment made to a person who is not in fact entitled to draw the deposit, though he may have possession of the book and present it at the time of payment, will not discharge the bank, unless it exercised at least ordinary care and diligence in paying the money to the wrong person." (See, also, *Allen* v. *Williamsburgh Savings Bank,* 69 N. Y. 314; *Kummel* v. *Germania Savings Bank,* 127 N. Y. 488; *Mahon* v. *South Brooklyn Savings Institution,* 175 N. Y. 69, 72.) In the latter case the opinion contains this statement of the rule: " When through a depositor's carelessness his bank book gets into the hands of a third person who presents it to the bank, the latter may show its care and diligence in making payment to the person presenting the pass book, and thus protect itself against a second demand for payment by the careless depositor."

How a jury may be impressed by the charge of a court as to the burden of proof of course no one knows except the jurors themselves. Upon whom rests the burden of proving a fact cannot be said to be immaterial and frequently is of great moment. The only practical course to follow is to state clearly to a jury the law as it is. The error in this particular requires a new trial.

There was also evidence admitted in this case which we think improper as bearing upon the question of the paying teller's neglect. One William E. Knox, the

comptroller of the Bowery Savings Bank, was made an expert witness as to the mental action of bank clerks. The depositor's name was Ernestine, the order as presented by her son was signed Ernestina. After qualifying through an experience of years at the signature window and the examination of hundreds of names daily, the witness was asked this question:

" Now I ask you to tell us whether or not, in your opinion, if a depositor opens an account in her name as 'Ernestine' somebody or other, and a draft is presented signed 'Ernestina' somebody or other, purporting to come from her, that that circumstance would tend to excite suspicion in the mind of the ordinarily competent signature clerk? "

Over objection and exception the witness answered: " In my opinion it would not excite any suspicion."

It will be noted that this witness is not asked as an expert familiar with the banking business to give the usual and ordinary methods employed in the savings bank business in dealing with signatures and identification, but is asked his opinion regarding the mental operation of another; he is called upon to state what in his judgment would be the effect upon the mind of an ordinary bank clerk if the last letter of a name were wrong, and whether or not this circumstance would excite suspicion. This is carrying the rule of expert testimony too far. No authority can be found justifying such evidence. It was for the jury to say whether the clerks of the bank exercised care and whether if reasonably prudent they should have been suspicious. No expert could answer this question for them. Neither could he take up the evidence piece by piece and say just where suspicion would or should begin.

This expert familiar with the savings bank business could have stated the usual and customary method of dealing with signatures and the withdrawal of bank

deposits.   The manner in which signatures were examined and the questions which were usually asked of persons other than the depositor presenting money orders could have been testified to.   Also I take it the expert could have described the appearance of many signatures, for instance that it was not unusual for names to be signed by a mark or else improperly spelled or as in this instance the last letter of the name unlike the last letter in the genuine signature.   Then he could have stated the practice of banks in such cases and the things done by the clerks to make reasonably sure that the withdrawal was authorized or else that in such cases nothing was done.   All these facts could have been laid before the jury and it could then have drawn the conclusion whether the employees were careful or negligent.   It was not for the expert to state his opinion on the given fact that the employee was careful or, what amounts to the same thing, that he had no cause for suspicion.

Evidence was offered through other witnesses to show the frequent differences in the spelling of the first name of depositors.   The " t " of a name was sometimes crossed and other times not.   An " i " was sometimes dotted and other times not.   There was a difference frequently in the making of the letter " r " and of the letter " e " and of the letter " h."   The letter " d " was sometimes opened and sometimes closed.   All of such differences appeared many times a day.   The evidence does not disclose, however, what was customarily done in such cases although it is fair to presume that the signatures were honored as genuine.   Considering these differences and the practice of the bank in disregarding them without their ever being questioned the jury might well say that no suspicion would arise in the mind of a careful paying teller by reason of the spelling of the name Ernestine in this case.   There was no occasion, however, for an expert to draw this conclusion for them.

While the rule as to expert testimony has been frequently stated and is well understood yet its application is sometimes difficult because of varying facts and circumstances. No such difficulty, however, arises here. The authorities agree that where the jury can form a proper conclusion after facts known only to experts have been disclosed it is the jury's province to draw the conclusion. (*Dougherty* v. *Milliken*, 163 N. Y. 527; *Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424, 429.) This latter case contains a statement of the rule quoted in many of the cases.

" While it is no longer a valid objection to the expression of an opinion by a witness, that it is upon the precise question which the jury are to determine (*Transportation Line* v. *Hope*, 95 U. S. 297; *Bellinger* v. *N. Y. C. R. R.*, 23 N. Y. 42; *Cornish* v. *Farm B. F. Ins. Co.*, 74 id. 295), evidence of that character is only allowed when, from the nature of the case, the facts cannot be stated or described to the jury in such a manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable. (*Ferguson* v. *Hubbell*, 97 N. Y. 507; *Schwander* v. *Birge*, 46 Hun, 66; Greenl. on Ev. vol. 1, section 440 and note.) " (See, also, *McCarragher* v. *Rogers*, 120 N. Y. 526; *Schutz* v. *Union Railway Company of New York City*, 181 N. Y. 33; *People* v. *Underhill*, 142 N. Y. 38.)

The methods and procedure of banks in dealing with questioned money orders could have been easily explained to the jury so as to enable them to determine for themselves the question of reasonable care and diligence. Lack of suspicion cannot always be the determinative factor in paying out a depositor's money. Reasonable care might demand a suspicion where from habitual indifference none in fact existed.

What we have here stated also applies to these questions asked of the assistant paying teller:

" Q. Mr. Robertson, in your opinion would it excite any suspicion in the mind of an ordinarily competent test clerk that three or four withdrawals were made within one month on an account upon which there had been no previous withdrawals for some time?   *   *   * Q. In your opinion would it excite any suspicion in the mind of an ordinarily competent test clerk that the whole of an account were withdrawn after there had been no withdrawals for some time? "

The objections to these questions should have been sustained.

As there is to be a new trial of this case it may be well to call attention to another ruling which was erroneous. The plaintiff called the paying teller of the Coal and Iron National Bank and asked him a question as an expert similar to that asked by the defendant of its experts as above given and which was equally objectionable. Being incompetent, as we have stated, the court could properly have excluded it. The ruling made, however, was as follows:

" The Court holds that the witness has qualified as an expert on handwriting, but has not qualified as an expert as to the degree of care that should be exercised by a teller in a savings bank."

If this meant that officials from banks of deposit qualified as experts could not give the usual and customary methods used in such banks for comparing signatures or detecting forgeries we think this a too narrow limitation. The custom which is followed in all the banks in the city of New York — deposit or savings — could properly be shown in order to determine the care used in this instance.

It follows from what is here stated that the judgment appealed from must be reversed and a new trial granted.

HISCOCK, Ch. J., CHASE, COLLIN, CUDDEBACK and HOGAN, JJ., concur; McLAUGHLIN, J., not sitting.

Judgment reversed, etc.