# BANK OF SOUTHERN MARYLAND *v.*
# ROBERTSON'S CRAB HOUSE, INC.

[No. 1027, September Term, 1977.]

*Decided July 12, 1978.*

The cause was argued before LOWE, MELVIN and MACDANIEL, JJ.

*Paul F. Strain,* with whom was *Thomas C. Carrico* on the brief, for appellant.

*Thomas C. Hayden, Jr.,* for appellee.

MELVIN, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Charles County (Bowling, J.) dated October 5, 1977, granting summary judgment in favor of Robertson's Crab House, Inc. (appellee) and against the Bank of Southern Maryland (appellant) in the amount of twelve thousand four hundred seventy-four dollars and sixty-six cents ($12,474.66) and costs of the proceeding.[1] The ultimate issue for our determination is, of course, whether summary judgment was properly granted. We think it was, and will affirm the judgment below.

Md. Rule 610 d 1 provides that summary judgment

"[S]hall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."

As noted by the Court of Appeals in *Washington Homes, Inc. v. Interstate Land Development Co.,* 281 Md. 712, 717-18, 382 A. 2d 555 (1978):

"In reviewing the propriety of the trial court's action on a motion for summary judgment, the appellate court is concerned with whether there was a dispute as to any material fact, and if not, whether the moving party was entitled to judgment as a matter of law. In considering the matter, the duly shown facts which would be admissible in evidence and all reasonable inferences deducible therefrom must be considered in a light most favorable to the party opposing the motion and against the party making the motion. *See Rooney,* 265 Md. at 563-564; *Shatzer,* 261 Md. at 95; *Brown,* 260 Md. at 255."

---

1. The order also determined that notwithstanding the pendency of the Bank's third party claim against Jennings L. Hanson, there is no just reason for delay in the entry of the judgment herein, and directed the entry of judgment. *See* Md. Rule 605 a.

The pleadings, depositions, admissions and affidavits on file in the instant case establish the following undisputed facts: Robertson's Crab House, Inc. is a body corporate of the State of Maryland whose principal place of business is at Popes Creek, Newburg, Charles County, Maryland. Its president is Joseph R. Robertson and its vice-president is George W. Robertson (Joseph's father). Prior to Robertson's incorporation in 1974, the business was operated as a sole proprietorship by George Robertson.

For approximately 21 years prior to incorporation, George Robertson employed the services of Jennings L. Hanson as the accountant for Robertson's Crab House. Mr. Hanson's duties included taking care of books, balance sheets, and quarterly and yearly tax returns for Robertson's. Mr. Hanson also reconciled the monthly bank statements for the business, and picked up the monthly statements at the bank. In the performance of these duties, Hanson would visit the Bank of Southern Maryland twice a month on Robertson's behalf: once to pick up the monthly statements, and once to make deposits into the Bank's tax and loan account for federal withholding and social security taxes.[2]

Upon its incorporation in 1974, Robertson's Crab House, Inc. continued to employ Hanson in essentially the same capacity in which he was employed prior to incorporation. Hanson continued to visit the Bank twice monthly on Robertson's behalf, and continued to reconcile the monthly statements. After Hanson reconciled the monthly statements, they were given to Joseph Robertson, who kept them in the file cabinet at the corporation office. Neither Robertson nor anyone else checked Hanson's reconciliations. Joseph Robertson often signed checks in blank, and allowed Hanson to fill in the amounts. Hanson was never, however, authorized to sign any checks on behalf of Robertson's Crab House, Inc.

---

2. We were informed at oral argument that the Bank maintains an internal "tax and loan" account as a designated depository for the Internal Revenue Service. This account is established so that employers such as Robertson's may make periodic deposits of money withheld from employees' paychecks for federal income and social security taxes, in lieu of making payment directly to the Internal Revenue Service.

or to make deposits into any account other than the tax and loan account. The officers and employees of the Bank of Southern Maryland were aware that Hanson had no authority to sign checks on behalf of Robertson's.[3]

Between July, 1974 and September, 1975, Hanson presented the eleven checks here involved to the Bank of Southern Maryland. The checks were signed by Joseph Robertson, and were made payable to the Bank of Southern Maryland, as they were intended to be deposits of withholding taxes to the Bank's tax and loan account. At least one of the eleven checks, and perhaps as many as ten, were signed in blank by Joseph Robertson and filled in by Hanson.

When Hanson presented these checks to the Bank, the Bank permitted him on eight occasions to deposit a portion of the check proceeds to the credit of Robertson's tax and loan account number and the remainder to either Hanson's personal accounts, or to the credit of tax and loan account numbers of other businesses for whom Hanson was also bookkeeper. On two occasions, the entire amount of the checks was deposited to Hanson's personal account, and on one occasion, the Bank allowed Hanson to purchase a cashier's check (in the amount of $2,500.00 by adding $75.00 in cash to the $2,425.00 amount of the check made payable to the order of the Bank), made payable to a designee of Hanson.[4] On none of these eleven occasions did the Bank require Hanson to endorse the check or make inquiry to Robertson's Crab House, Inc. of Hanson's authority to so make use of Robertson's funds. The total amount of the funds diverted by Hanson was $12,474.66 — the exact amount for which summary judgment was entered against the Bank.

In January of 1976, Joseph Robertson did check Hanson's reconciliations, and eventually discovered that something was amiss. Robertson noticed that the amounts on certain checks

3. Gerald B. Dyson, vice-president and cashier of the Bank of Southern Maryland testified on deposition that the only persons authorized to sign checks on the account of Robertson's Crab House, Inc. were: Joseph R. Robertson; George W. Robertson; Audrey C. Robertson; and Pamela Robertson.

4. See appendix A for a summary of the stipulation as to the disposition of the eleven checks here involved.

and the corresponding check stubs were different; that certain checks and stubs were missing; that certain checks were altered; and that certain of the stubs had ledger numbers on them indicating the account into which Hanson had diverted the funds. No check was made on Hanson prior to January of 1976 because Robertson trusted Hanson completely.

On October 27, 1976, Robertson's Crab House, Inc. filed a declaration against the Bank alleging breach of contract and negligence in the Bank's payment of these eleven checks. On November 16, 1976, the Bank filed a general issue plea, and also pleaded limitations. A hearing was held on Robertson's motion for summary judgment on January 27, 1977, after which the motion was granted. A timely appeal was noted to this Court. In an effort to demonstrate that summary judgment was improperly granted, the Bank presents three questions for our consideration:

> "I. Did not the Bank conduct Robertson's transactions in a manner which was consistent with its duties to its customer as established by the course of conduct between them?
>
> II. Did not Robertson's negligence prior to the transaction facilitate the fraud and preclude recovery?
>
> III. Did not Robertson's negligence subsequent to each check transaction bar its recovery?"

We will consider each of these questions, but will discuss questions two and three together. As previously noted, however, we think Judge Bowling properly granted the motion for summary judgment.

## I.

Appellant first contends that it conducted Robertson's transactions in a manner which was consistent with its duties to its customer as established by the course of conduct between them. Simply stated, the Bank contends that it was not negligent in dealing with Robertson's funds. We disagree.

In *Taylor v. Equitable Trust Co.,* 269 Md. 149, 155-56, 304 A. 2d 838 (1973) the Court of Appeals set out the relationship between a bank and its depositor:

"The relation between a bank and its depositor is a legal one. It is broadly defined as being that of debtor and creditor. *Keller v. Fredericktown Sav. Institution,* 193 Md. 292, 296, 66 A. 2d 924 (1949), the rights of the depositor and the liability of the bank being contractual, *Pritchard v. Myers,* 174 Md. 66, 76, 197 A. 620 (1938), but *see* Note, *Negotiable Instruments: Payment of Materially Altered Checks: Bank Not Liable to Depositor in Tort,* 40 Cornell L. Q. 795 (1955). Unless modified by the parties the contract is that implied in a banking relationship, *Magness v. Equitable Trust Co.,* 176 Md. 528, 531, 6 A. 2d 241 (1939). For a breach of this contract, an action in tort will lie, *Siegman v. Equitable Trust Co.,* 267 Md. 309, 313, 297 A. 2d 758 (1972), following in the venerable footsteps of *Rolin v. Steward,* 14 C. B. 595, 139 Eng. Repr. 245 (1854) and *Marzetti v. Williams,* 1 B & AD 415, 109 Eng. Repr. 842 (1830).

While this line of cases dealt primarily with wrongful dishonor of a depositor's checks, we see no reason why the same general principles are not equally applicable to a wrongful disbursement of funds belonging to a depositor. *See General Apparel Sales Corp. v. Chase Manhattan Bank, NA,* 321 F. Supp. 891 (S.D.N.Y. 1970), where recovery was allowed when the bank accepted deposits of General Apparel's funds after the account had been closed. *See also* Note, 40 Cornell L. Q., *supra* at 801; Comment, *Bank Not Liable in Tort to Depositor for Honoring Forged or Altered Check,* 6 Syracuse L. Rev. 365, 367-68 (1955)." (Footnote omitted).

*See also University National Bank v. Wolfe,* 279 Md. 512, 514-15, 369 A. 2d 570 (1977); *Gillen v. Maryland National Bank,* 274 Md. 96, 101-102, 333 A. 2d 329 (1975).

That a bank must use ordinary care in disbursing a depositor's funds was made clear in *Taylor v. Equitable Trust Co., supra* at 155 [quoting from a Comment in 2 Bender's U.C.C. Service, Hart and Willier § 12.35, at 128-29 (1972)]:

> " 'Nowhere in the Code does it say in so many words that a bank, whether a collecting bank or payor bank, is liable for negligently paying an item. Hints, however, abound. They start with Section 1-103, providing that common-law rules of negligence still apply. Section 3-419(3) limits recovery against collecting banks for conversion only if they acted in good faith and followed 'reasonable commercial standards.' Section 3-406 precludes assertion of a material alteration or unauthorized signature against the party whose negligence substantially contributed to the wrongdoing, but only if the payor is a holder in due course or paid 'in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.' A bank is prohibited from disclaiming 'responsibility for its own lack of good faith or failure to exercise ordinary care' under Section 4-103(1), apparently upon the assumption that such duties exist. Finally, a bank's lack of care shifts the burden for paying over a forged signature or a materially altered item from its customer who was negligent in discovering the wrongdoing, back to the bank under Section 4-406(3).' "

And, in *Gillen v. Maryland National Bank, supra* at 101-102 the Court of Appeals stated:

> "The relationship between a savings bank and a depositor is a contractual one, of which the rules and regulations of the passbook are a part. *Hileman v. Hulver,* 243 Md. 527, 221 A. 2d 693 (1966); *Savings Bank v. Appler,* 151 Md. 571, 135 A. 373 (1926). Implicit in the contract is the duty of the bank to use ordinary care in disbursing the depositor's funds. *Commonwealth Bank v. Goodman,* 128 Md. 452, 97

A. 1005 (1916). The duty cannot be abrogated by agreement. Code (1964 Repl. Vol.) Art. 95B, §§ 1-102 (3), 4-103.[5] Thus, a depositor may sue in an action for breach of contract to enforce the bank's contractual obligation to use ordinary care. *Commonwealth Bank v. Goodman, supra. See also Taylor v. Equitable Trust Co.,* 269 Md. 149, 304 A. 2d 838 (1973)."

The question of whether a bank was negligent in paying an item, that is, whether the bank paid the item in accordance with reasonable commercial standards, *see* Md. Ann. Code, Comm. L. Art., §§ 3-406 and 4-406 (1975), is one which must be decided upon the facts of each particular case. *Dominion Construction, Inc. v. First National Bank of Maryland,* 271 Md. 154, 166, 315 A. 2d 69 (1974). *See also Gillen v. Maryland National Bank, supra; Taylor v. Equitable Trust Co., supra; Gresham State Bank v. O & K Construction Co.,* 231 Or. 106, 370 P. 2d 726, 100 A.L.R. 2d 654 (1962), *opinion clarified, rehearing denied,* 231 Or. 106, 372 P. 2d 187 (1962); Whaley, *Negligence and Negotiable Instruments,* 53 N.C.L. Rev. 1, 15 (1974); Note, *Forgeries and Material Alterations: Allocation of Risks Under the Uniform Commercial Code,* 50 Boston

5. Former Art. 95B, § 1-102 (3), now Md. Ann. Code, Comm. L. Art., § 1-102 (3) (1975), provides that:

"The effect of provisions of Titles 1 through 10 of this article may be varied by agreement, except as otherwise provided in Titles 1 through 10 of this article and except that the obligations of good faith, diligence, reasonableness and care prescribed by Titles 1 through 10 of this article may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable."

Former Art. 95B, § 4-103(1), now Md. Ann. Code, Comm. L. Art., § 4-103 (1) (1975) provides that:

"The effect of the provisions of this title may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable."

Both of these provisions prevent a bank from contracting away its obligation to use ordinary care in the handling of depositors' funds.

Univ. L. Rev. 536, 547 (1970). *See generally Annot., Construction and Effect of UCC Art. 4, Dealing with Bank Deposits and Collections,* 18 A.L.R. 3d 1376, 1400-1402 (1968); Annot., *Construction and Effect of UCC Art. 3, Dealing with Commercial Paper,* 23 A.L.R. 3d 932, 1000 and 1004 (1969). The reasonableness of the bank's conduct may, of course, be assessed in light of the plaintiff's conduct. *Transamerica Insurance Co. v. United States National Bank,* 276 Or. 945, 558 P. 2d 328, 335 (1976).

Our starting point for determining whether the Bank was negligent as a matter of law in paying Hanson all or part of the proceeds of the eleven checks is with the general proposition that:

> "Where a check is drawn to the order of a bank to which the drawer is not indebted, the bank is authorized to pay the proceeds only to persons specified by the drawer; it takes the risk in treating such a check as payable to bearer and is placed on inquiry as to the authority of the drawer's agent to receive payment." (Footnotes omitted). 9 C.J.S., Banks and Banking § 340 at 683.

*See also* 10 Am. Jur. 2d, *Banks* § 560 at 529-30; 5A Michie, *Banks and Banking* § 183 at 495-96 (1973); *Sun'n Sand, Inc. v. United California Bank,* 57 C.A. 3d 125, 129 Cal. Rptr. 861, 869 (1976); *Martin v. First National Bank,* 358 Mo. 1199, 219 S.W.2d 312 (1949); *Robbins v. Passaic National Bank & Trust Co.,* 109 N.J.L. 250, 160 A. 418, 82 A.L.R. 1368 (1932). *See generally* Annot., *Liability of Bank Which Diverts Checks or Drafts Drawn to its Order to a Use Other Than That of the Drawer,* 82 A.L.R. 1372 (1933) and Annot., *Duty and Liability of Bank in Respect of a Depositor's Check Drawn Upon and Payable to the Bank,* 138 A.L.R. 853 (1942), and cases cited therein. This rule has not been displaced by the Uniform Commercial Code. *Transamerica Insurance Co. v. United States National Bank, supra,* 558 P. 2d at 333.

There is, however, a corollary to the general rule that a drawee bank acts at its own risk in paying to a third person the proceeds of a check payable to the bank's order, and that

is that "the drawer acts at its risk in clothing its agent with apparent authority to receive the proceeds of such a check [made payable to the bank's order] in cash." 5A Michie, *Banks and Banking, supra* at 495. *See also* 10 Am. Jur. 2d, *Banks, supra* at 530; *Mayo Bros. Chemical Corp. v. Capital National Bank,* 192 Miss. 293, 5 So. 2d 220, 222 (1941). Thus, if the drawer clothes an agent with apparent authority to receive the proceeds of a check made payable to the bank's order, the bank is not negligent in (and, therefore, not liable to the drawer for) paying the proceeds of the check to the agent or appropriating the proceeds in a manner directed by the agent contrary to his actual authority. 10 Am. Jur. 2d, *Banks, supra* at 530.

In the instant case, it is clear that Hanson had no actual or apparent authority to receive the proceeds of the eleven checks here involved. Actual authority is "the power of an agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him." Restatement (Second) of Agency § 7 (1958). It is undisputed that neither Joseph Robertson nor any other officer of Robertson's Crab House, Inc. ever gave Hanson any authority to use the proceeds of the eleven checks for other than deposits to the tax and loan account.

As noted also by the Restatement (Second) of Agency at § 8:

"Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons."

*See also Medical Mutual Liability Insurance Society v. Mutual Fire, Marine and Inland Insurance Co.,* 37 Md. App. 706, 720-21, 379 A. 2d 739 (1977).

In the instant case, neither Joseph Robertson nor any other officer of Robertson's Crab House, Inc. made any manifestations to the Bank that would indicate Hanson had any authority to divert the proceeds of the eleven checks to his own use. *See Atlantic Trust Co. v. Subscribers, etc.,* 150

Md. 470, 475-77, 133 A. 319 (1926). *Compare Mayo Brothers Chemical Corporation v. Capital National Bank, supra,* 5 So. 2d at 221. *But see Senate Motors, Inc. v. Industrial Bank of Washington,* 9 UCC Rept. Serv. 387 (1971). Apparent authority cannot be founded on statements or conduct by the agent alone. *Taylor v. Equitable Trust Co., supra* at 161-62.

We find particularly apposite here a series of quotations relative to apparent authority in circumstances not unlike those in the case *sub judice,* contained in *Taylor v. Equitable Trust Co., supra* at 161-62:

> " 'A third person dealing with a purported agent should communicate with the principal to verify the agent's authority to sign. A written statement from the principal as to the agent's authority may also aid in avoiding any subsequent dispute as to whether such authority existed, or whether the principal had made any statement as to the authority of the apparent agent.' 2 Anderson, *Uniform Commercial Code, supra,* § 3-404:3 at 922.

"In *Noah v. Bowery Sav. Bank,* 225 N. Y. 284, 155 N.Y.S. 1128, 122 N. E. 235 (1919), the court, in discussing the conduct of a savings bank, which permitted a withdrawal by a person other than the depositor who had possession of the passbook, said:

> 'Lack of suspicion cannot always be the determinative factor in paying out a depositor's money. Reasonable care might demand a suspicion where from habitual indifference none in fact existed.' 122 N. E. at 237.

"What Judge Bond said, speaking for the Court in *Atlantic Trust Co. v. Subscribers, etc.,* 150 Md. 470, 475-76, 133 A. 319 (1926), is similarly apposite here:

> 'The controlling rule is that a principal can be bound by the acts of another as agent

only so far as he, the principal, has empowered or permitted the other to represent him; and if the banker has been misled by an appearance of authority not known and acquiesced in by the principal, and so has accepted unauthorized endorsements, the banker is answerable for the loss.'

"See generally *P. Flanigan & Sons v. Childs,* 251 Md. 646, 653-54, 238 A. 2d 473 (1968); *Deane v. Big Spring Distilling Co.,* 138 Md. 388, 392-93, 113 A. 891 (1921); *Brager v. Levy,* 122 Md. 554, 561, 90 A. 102 (1914)."

We think this case is one where the Bank "has been misled by an appearance of authority not known and acquiesced in by the principal", and not one of apparent authority.

Having found from the undisputed material facts that Hanson had neither actual nor apparent authority to receive (or divert) the proceeds of the eleven checks here involved, the conclusion seems inescapable that the Bank, as a matter of law, breached the contract implied in the normal banking relationship or, put alternatively, was negligent in its treatment of Robertson's funds. The Bank, however, attempts to avoid this result by contending that Robertson's failure to object to the Bank's practice of treating checks made payable to the bank as bearer paper when both the drawer and the bearer are known to the teller and its failure to object to the Bank's initially having allowed Hanson to divert all of the proceeds of the first check (dated 7/12/74) amounted to a "subsequent modification" of the contract which would be implied in the normal bank-customer relationship. *See University National Bank v. Wolfe,* 279 Md. at 522 and cases cited therein.

In *University National Bank* the Court of Appeals held that it was error for a trial judge to conclude, as a matter of law, that the Bank was negligent in paying checks on one signature where the contract between the bank and the customer required two, where over an extended period of time almost 40% of all checks drawn had only one signature,

and where "the statements were regularly reconciled with the Depositor's records." *Id.* at 527. We think *University National Bank* is distinguishable from the instant case because in that case the customer was fully aware of, and thus can be said to have assented to, the bank's conduct in paying the checks on only one signature. In the instant case, it is undisputed that Robertson's was *not* aware of the Bank of Southern Maryland's conduct in allowing Hanson to divert all or part of the proceeds of the eleven checks to his own use. As stated by the Court of Appeals in *Maryland Supreme Corp. v. Blake Co.,* 279 Md. 531, 541, 369 A. 2d 1017 (1977), "The mutual assent which is the essential feature of every contract is crystallized when there is a *knowing and sufficient acceptance to a certain and definite offer.*" (citation omitted). Absent a knowing acceptance on Robertson's part, there could be no subsequent modification (by conduct or otherwise) of the contract implied in the banking relationship. As Robertson's did not know of the Bank's conduct in paying these checks (which at most can be construed as an offer to modify the contract implied in the banking relationship), it cannot be said to have assented to it.

We likewise conclude that Robertson's cannot be said to have knowingly assented to the Bank's "practice" of treating checks made payable to its order as bearer paper when the drawer and bearer are both known to the teller. There is simply nothing in the pleadings, depositions, affidavits and admissions before us which would support the conclusion that Robertson's knowingly acquiesced in this practice as specifically applied to it. Whether Robertson's knew that this practice existed between the Bank and other customers is irrelevant so long as Robertson's never knowingly assented to the practice as applied to it. Moreover, it is our opinion that for a Bank blindly to treat commercial paper made payable to its order as bearer paper for the sole reason that the drawer and bearer are known to the Bank is "manifestly unreasonable". The Bank cannot, therefore, establish the reasonableness of such conduct on any theory of implied contract. *See Gillen v. Maryland National Bank, supra* at 101-102; Md. Ann. Code, Comm. L. Art., §§ 1-102 (3) and 4-103 (1) (1975) and note 5 *supra.*

Based on the undisputed facts contained in the record before us, we think the Bank was negligent as a matter of law in the disbursing of Robertson's funds. We turn, then, to the question of whether Robertson's negligence (assuming, *arguendo,* that it existed) either prior to or subsequent to the Bank's negligence precludes Robertson's from recovering against the Bank.

## II

By its questions two and three, the Bank contends that Robertson's negligence prior to and subsequent to the check transactions bars its recovery. Even assuming, *arguendo,* that Robertson's was negligent in signing one or more of the checks in blank and in not checking Hanson's examination of the Bank's monthly statements, we think such negligence does not bar its recovery in the instant case.

In urging that Robertson's negligence prior to and subsequent to the check transactions bars its recovery, the Bank relies on Md. Ann. Code, Comm. L. Art., §§ 3-406 and 4-406 which provide, in pertinent part, as follows:

"§ 3-406. Negligence contributing to alteration or unauthorized signature.

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and *in accordance with the reasonable commercial standards of the drawee's or payor's business.*" (Emphasis added).

\* \* \*

"§ 4-406. Customer's duty to discover and report unauthorized signature or alteration.

(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith

in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

(a) His unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(b) An unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

(3) *The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item.*

(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration." (Emphasis added).

"Alteration" is defined in § 3-407 (1) (b) to include, "An incomplete instrument, by completing it otherwise than as authorized". We will assume, for purposes of this discussion, that Hanson completed the one or more checks signed by Joseph Robertson in blank "otherwise than as authorized" and thus that he (Hanson) altered the checks.

In our view, §§ 3-406 and 4-406 (2) do not bar Robertson's recovery for two reasons. First, these sections only preclude a person who was negligent prior to (§ 3-406) or subsequent to (§ 4-406) a check transaction from asserting an unauthorized signature or alteration against the bank. In the instant case, Robertson's is asserting *not* an unauthorized signature or alteration against the bank, but rather that the Bank negligently permitted Hanson to divert all or part of the proceeds of the eleven checks. If the Bank treated these items properly, and either credited the entire amount of the check to Robertson's tax and loan account, or inquired of Robertson's as to Hanson's authority to receive the proceeds of the checks, any alteration of the checks by Hanson would have been of no consequence.

The second reason why §§ 3-406 and 4-406 (2) do not bar Robertson's recovery is that these sections only preclude recovery when the bank pays the instrument in accordance with reasonable commercial standards (§ 3-406) or with ordinary care. *See* § 4-406 (3). In the instant case, the Bank of Southern Maryland was negligent as a matter of law in paying these checks, and thus it cannot claim the benefit of §§ 3-406 or 4-406 (2). *See* Whaley, *Negligence and Negotiable Instrument, supra* at 14 ("Thus there is no balancing test or rule of contributory negligence; if the bank failed to use ordinary care it always loses, whether the customer was negligent or not."). While § 4-406 (4) applies "[w]ithout regard to care or lack of care of either the customer or the bank" that section, too, when applicable, operates only to preclude a customer from asserting an unauthorized signature or alteration against the bank. As we have seen, Robertson's is not asserting an unauthorized signature or alteration against the bank, and thus § 4-406 (4) does not bar its recovery.

Even under the common law,[6] a bank which negligently pays an item cannot invoke equitable estoppel defenses against a depositor. Thus, in *University National Bank, supra* at 516-17 the Court of Appeals (while holding that the Bank was not negligent as a matter of law) stated:

"These defenses available to a bank, however, must be viewed in light of any negligence on the part of the bank. The rule generally followed is as set out in 5A *Michie on Banks and Banking* § 192:

'Though it is the law that a depositor is charged with knowledge of errors in the account which a reasonable examination of the bank's statements and vouchers within a reasonable time after their receipt by him would disclose, and that a failure to notify the bank of any errors of which he is thus charged with knowledge may estop him from disputing the correctness of the account to the extent that the bank was pecuniarily prejudiced by his failure to give notice of the errors, *if the ignorance of the bank of the error in the account arose from its own negligence,* then it cannot claim that the depositor is estopped because he did not dispel an ignorance which in contemplation of law did not exist, because the bank, in the exercise of reasonable care, should have had knowledge of the erroneous state of the account.' (Emphasis added).

"In short, the depositor is not duty bound to protect the bank against its own negligence. Only where the bank has exercised reasonable care in the exercise of its duties, may it properly invoke equitable defenses against a depositor. The negligence of a depositor does not relieve the bank of its continuing duty to exercise reasonable care."

---

6. Md. Ann. Code, Comm. L. Art., § 1-103 provides that unless displaced by particular provisions of Titles 1 through 10 of this article (the UCC), the common law shall supplement those provisions.

As we have concluded that the Bank was negligent as a matter of law in paying the eleven checks here involved, it follows that the Bank cannot rely on the customer's negligence in an attempt to avoid liability.

In support of its contention that Robertson's failure to examine the Bank's monthly statements of account precludes Robertson's recovery, the Bank cites two New York cases involving embezzlement schemes substantially similar to the one at bar: *Arrow Builders Supply Corp. v. Royal National Bank,* 21 N.Y.2d 428, 235 N.E.2d 756 (1968) and *Federal Insurance Co. v. Groveland State Bank,* 37 N.Y.2d 252, 333 N.E.2d 334 (1975). In both cases, the Court of Appeals of New York reversed the granting of summary judgment in favor of the plaintiff/depositor, holding that there existed questions of fact as to whether the depositor was negligent in failing to examine the monthly statements of account, and as to whether this negligence contributed directly to the losses incurred. *Arrow Builders, supra,* 235 N.E.2d at 758; *Groveland State Bank, supra,* 333 N.E.2d at 337-38.

In our view, these cases adopt a rule of law contrary to that set out by our Court of Appeals in *University National Bank v. Wolfe, supra* at 517; *Atlantic Trust Co. v. Subscribers, etc., supra* at 475-76 and *Taylor v. Equitable Trust Co. supra* at 161-62.

> *Judgment affirmed; costs to be paid by appellant.*

*Appendix A*

| Exhibit No. | Date | Amount | Disposition Other Than to Credit of Robertson's Crab House, Inc. |
|---|---|---|---|
| 9 | 7/12/74 | $3,750.00 | $3,750.00 deposited to personal account of J. L. Hanson |
| 1 | 9/5/74 | 3,564.22 | $500.00 deposited to personal account of J. L. Hanson |
| 2 | 11/3/74 | 3,257.72 | $400.00 deposited to Tax & Loan Account of Hanson-Royal |
| 3 | 12/2/74 | 2,123.41 | $1,213.36 deposited to personal account of J. L. Hanson |
| 4 | 2/6/75 | 2,173.92 | $500.00 deposited to personal account of J. L. Hanson |
| 5 | 3/6/75 | 2,357.94 | $704.80 deposited to personal account of J. L. Hanson |
| 6 | 5/2/75 | 2,750.50 | $544.50 deposited to personal account of J. L. Hanson |
| 7 | 6/3/75 | 3,995.04 | $900.00 deposited to personal account of J. L. Hanson |
| 10 | 7/3/75 | 675.90 | $675.90 deposited to personal account of J. L. Hanson |
| 11 | 7/23/75 | 2,425.00 | $2,425.00 applied towards purchase of cashier's check made payable to designee of J. L. Hanson |
| 8 | 9/14/75 | 4,383.58 | $861.10 deposited to Tax & Loan Account of Popes Creek Pier |
| | | TOTAL | $12,474.66 |