**ROBIN LITTLEJOHN / LAM SUPPLY CORP., Plaintiff,**

v.

**PROVIDENT BANK, et al., Defendants.**

No. 03–1550 (RJL).

United States District Court, District of Columbia.

May 20, 2004.

Jerome E. Clair, Washington, DC, for Plaintiff.

James Taylor Heidelbach, Gebhardt & Smith, LLP, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court is the defendants' motion to dismiss, or in the alternative, for summary judgment as to the plaintiff's claim of negligence. The defendants, Provident Bank and its president, Gary N. Geisel ("Provident"), move for dismissal of this action on the grounds that the claims of the plaintiff, LAM Supply Corporation ("LAM"),[1] are barred by the express terms of a consent order of the Superior Court of the District of Columbia and that LAM has failed to raise any genuine issue of material fact with regard to the defendants' alleged negligence. For the following reasons, the Court agrees with the defendants and GRANTS their motion for summary judgment in this case.

### Factual Background

The claims in this case relate to a savings account opened with Provident under LAM's name by two former LAM employees, Marvin and Irene Sugarman, using the company's federal tax identification number. Marvin Sugarman was employed as the General Manager of LAM and Irene Sugarman was employed as its secretary and bookkeeper. The Sugarmans were both part owners of the corporation. Prior to the opening of the savings account, Account No. 7200022640, the names of Marvin and Irene Sugarman had been placed on LAM's other bank accounts to facilitate managerial ease in running the company. LAM alleges in its complaint that after opening this savings account on October 8, 2002, the Sugarmans deposited approximately $205,000 in checks payable to LAM into the savings account and then withdrew the same amount for their personal use.

LAM further alleges that Provident was negligent in allowing the Sugarmans to open the savings account by using LAM's tax identification number without requiring the Sugarmans to present proof of authorization, such as the articles of incorporation or bylaws. In addition, LAM claims that Provident was negligent in allowing the Sugarmans to submit a signature card for the account on December 17, 2002, that did not bear the name of LAM's president, Robin Littlejohn, and in allowing the Sugarmans to deposit and withdraw LAM's funds from the savings account. Finally, LAM asserts that Provident tried to cover up its negligent acts by denying it information about the account. For this claim of negligence, LAM seeks a judgment of $205,000 plus legal interest.

Although LAM's complaint curiously failed to acknowledge it, the savings account at issue in this case is also the subject of a pending case brought by LAM in the Superior Court for the District of Columbia. In that suit, *Littlejohn / LAM Supply Corp. v. Sugarman*, Civ. Action 03–2657 (D.C.Super., April 7, 2003), LAM and its president sued Provident and the Sugarmans, seeking a declaratory judgment that LAM had a right to the funds in the savings account at issue in this case, and another account also allegedly opened by the Sugarmans. On May 9, 2003, Provident filed its answer in that case. On July 18, 2003, the Superior Court issued a consent order of interpleader, ordering

---

1. Although both LAM Supply Corporation and Robin Littlejohn, its President, are named in the caption of the complaint in this case, only LAM Supply Corporation is plead as a party plaintiff. Compl. ¶ 5.

Provident to close the two disputed accounts (*i.e.*, Accounts No. 7200022640 and 5580307), and deposit all monies into the Registry of the Court. The order provides that upon the deposit of the monies, "Provident shall be discharged from any liability to the Interested Parties relating to the Disputed Accounts, all claims in this case against Provident Bank shall be dismissed with prejudice and Provident Bank shall cease to be a party to this action." Mot. to Dismiss, Ex. C. The "Interested Parties" in that case are LAM, Marvin and Irene Sugarman, and Marcia Sugarman, their daughter. The same day the consent order was entered, LAM instituted this diversity action. On July 29, 2003, Provident paid the monies on deposit in the two disputed accounts into the Registry of the Superior Court.

### *Discussion*

I. *Standard of Review*

Rule 12(b) of the Federal Rules of Civil Procedure requires that a motion to dismiss be considered according to summary judgment standard if the movant submits matters outside of the pleadings that are not excluded by the Court. Fed.R.Civ.P. 12(b), 56; *see also IMS v. Alvarez*, 129 F.3d 618, 619 (D.C.Cir.1997). The Court will consider pleadings and orders from the Superior Court action, as well as exhibits regarding the disputed savings account put forth by Provident, and will thus evaluate the Provident's motion under the summary judgment standard. Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there

is a genuine issue for trial.'" *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c), (e)). The court must view the facts in the light most favorable to the non-movant, giving the non-movant the benefit of all justifiable inferences derived from the evidence in the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After a careful review of the record, the Court finds that LAM released all claims of liability against Provident in the consent order entered in the Superior Court matter. Furthermore, LAM has failed to raise any genuine issues of material fact with regard to the defendant's alleged negligence.

II. *Consent Order of Interpleader*

Provident's first ground for dismissal, or summary judgment, on LAM's negligence claim is that the Superior Court's Consent Order of Interpleader constitutes a full release of any liability. The order, dated July 18, 2003 and signed by Judge Melvin J. Wright and all parties to the action, provides that upon deposit of the monies in the two accounts held by Provident, including Account No. 7200022640, into the Registry of the Superior Court, Provident "shall be discharged from any liability to the Interested Parties relating to the Disputed Accounts, all claims in this case against [Provident] shall be dismissed with prejudice and [Provident] shall cease to be a party to this action." Mot. to Dismiss, Ex. C. Provident argues that LAM is collaterally estopped from litigating its negligence claim as a result of this order. In addition, Provident argues that LAM expressly agreed to the release language in the consent order and to the entry of the consent order, as consideration for Provident's agreement not to seek reimburse-

ment of its attorneys' fees in the Superior Court case. Def. Reply to Pl. Opp. 1–2. LAM responds that although the consent order could be considered a valid and final determination, the issue of the bank's negligence was not litigated in the case and thus preclusion is inappropriate. Pl. Amend. Opp. 1–2.

While the Court agrees with LAM that the consent decree does not trigger *res judicata* or issue preclusion because there is no indication that the issue of Provident's negligence was litigated before the Superior Court, *see Does I through III v. District of Columbia and MRDDA,* 238 F.Supp.2d 212, 218–19 (D.D.C.2002), LAM is nevertheless barred from bringing claims against Provident for conduct arising from the disputed account in this case because the consent order constituted a settlement in which LAM released *all* claims against Provident. *See Federal Marketing Co. v. Virginia Impression Products Co.,* 823 A.2d 513, 521 (D.C.Ct. App.2003) (finding that a consent decree was a "contract—a settlement agreement—as well as a court order...."). Indeed, the consent order not only addresses release of the claims in the Superior Court case, but also expressly addresses "any liability to the Interested Parties from the Disputed Accounts..." Mot. to Dismiss, Ex. C. LAM neither disputes that it was a party to this consent order nor asserts any good cause for this Court not to construe the language of the consent order as a release or settlement. Instead, LAM merely presents the conclusory statement that "[a]ssuming the Consent Order of Interpleader agreed to by LAM has some effect on this case, which LAM does not concede, it would not allow the bank to disclaim responsibility for failure to exercise ordinary care..." Pl. Amend. Opp. 3. Construing this order within its four corners, the Court finds that it constitutes a voluntary settlement of the disputed claim and that LAM has presented no good

cause to set it aside. *Federal Marketing Co.,* 823 A.2d at 521.

### III. *Plaintiff's Negligence Claim*

Moreover, even if the Court declined to construe the consent order as a settlement of all claims against Provident, LAM fails to present any genuine issue of material fact regarding its negligence claim that would sustain this action against summary judgment.

LAM appears to be of two minds as to which jurisdiction's law it contends Provident has violated. It states a claim for common law negligence in its complaint, but then makes a vague reference to the Maryland Commercial Code in its opposition. Pl. Amend. Opp. 3. Fortunately, the Court need not engage in a complex choice-of-law analysis under the circumstances because LAM's claim fails under both District of Columbia and Maryland laws. Under the laws of the District of Columbia and Maryland governing the conduct of depository banks, a bank must act according to reasonable commercial standards applicable to the business. *See Kuwait Airways Corp. v. American Security Bank,* 890 F.2d 456, 464 (D.C.Cir. 1989); *Bank of Southern Maryland v. Robertson's Crab House, Inc.,* 39 Md.App. 707, 389 A.2d 388, 393 (1978). Whether a bank has acted in a commercially reasonable manner is usually a question of fact. If a bank takes for deposit in an individual account a check made payable to a corporation without first ascertaining the authority of the depositor, however, such conduct is commercially unreasonable as a matter of law. *Kuwait Airways Corp.,* 890 F.2d at 464; *see also American Machine Tool Distributors Assoc. v. Nat'l Permanent Federal Savings and Loan Assoc.,* 464 A.2d 907, 913–14 (D.C.1983) (bank's conduct was commercially unreasonable where it allowed an individual to open an

account in his own name and deposit checks payable to a corporate payee). The Maryland courts similarly hold that where a bank pays the proceeds of a corporate account to a third party with no actual or apparent authority to receive such proceeds, such conduct is similarly commercially unreasonable. *Bank of Southern Maryland,* 389 A.2d at 394.

In this case, LAM alleges that Provident was negligent in allowing the individual savings account to be opened and in receiving for deposit checks payable to LAM. In addition, LAM alleges that Provident was negligent in failing to require proof of authorization or a signature card with the name of LAM's president on it. Finally, LAM alleges that the bank was negligent in allowing the Sugarmans to withdraw LAM's funds from the savings account once it was opened.

■ In light of the documentary evidence put forth by Provident, the Court finds that there is no genuine issue of material fact as to LAM's claim of negligence. First, although LAM asserts that the bank was negligent in allowing an individual account to be opened and in accepting for deposits checks addressed to LAM, Provident has presented documents showing that LAM's president authorized the opening of the account. *See* Mot. to Dismiss, Ex. E. (authorization forms dated July 31, 2001 and signature card dated October 8, 2002 for account # 7200022640 bearing the name and signature of Robin Littlejohn). Moreover, Provident asserts that although there was an error in a signature card listing the account as an "individual" account, this clerical error had no impact on the titling of the account and the account was still titled under the name of LAM corporation. Def. Reply 3. LAM presents no evidence that either disputes this documentary evidence or tends to show that Provident allowed the Sugarmans to open up an individual account in their names in which to deposit LAM's funds. To the contrary, LAM merely alleges that "[i]in each particular case the trier of fact must sift through the evidence to make a determination of whether the bank used reasonable commercial standards or was negligent[,]" Pl. Opp. 2, and then, without any explanation, presents a signature card dated December 17, 2002 that bears the Sugarmans' signatures.

Second, the facts and evidence presented in this case support Provident's contention that it could reasonably have perceived that the Sugarmans had actual and apparent authority to open the account and access proceeds deposited there. LAM concedes in its complaint that the Sugarmans were its employees and were named on LAM's other bank accounts so they could access the funds in those accounts. Compl. ¶ 8. In addition, the authorization forms for account # 7200022640 presented by Provident bear the name and signature of LAM's president. Mot. to Dismiss, Ex. E. The accounts were opened in the name of LAM and LAM's president had signature authority over the accounts. Thus, Provident would have no reason to believe that the Sugarmans lacked authority to open the account. Indeed, LAM concedes that its president "signed several generic commercial signature cards in her office" in 2001 that were delivered to the bank in 2001. Compl. ¶ 7. LAM puts forth no explanation of how the opening of the account could constitute negligence on the part of Provident if the president's signature was on the authorization forms and the October 8, 2002 signature card. Instead, LAM merely alleges that the signature must have been a "photocopy." Compl. ¶ 11. Moreover, LAM fails to explain how Provident would or should have known that the signature was false or forged in the first place.

Finally, the authorization forms corresponding to the disputed account explicitly state that authorization is given to the "Secretary or recording officer" of the company to sign notes or checks without the signature of any other officer of the corporation. Mot. to Dismiss, Ex. E. Marvin and Irene Sugarman were officers listed on the forms and were the individuals who deposited checks payable to LAM and withdrew the proceeds from the account. LAM neither addresses nor disputes the import of these forms and the fact that they appear to authorize the Sugarmans to deposit and withdraw funds from the account. LAM also fails to assert why acceptance of the December 17, 2002 signature card constitutes negligence in light of the Sugarmans' apparent authority to manage the account. Absent the presentation of any coherent argument or evidence to the contrary, The Court finds that LAM has failed to present any issue of genuine fact regarding Provident's failure to act within reasonable commercial standards.

### ORDER

Accordingly, it is this 28th day of May, 2004, hereby **ORDERED** that Provident's motion for summary judgment [# 3] is **GRANTED**, and that the above-captioned action is dismissed.

**SO ORDERED.**