554 So.2d 108 (1989)
OUACHITA NATIONAL BANK IN MONROE (n/k/a Premier Bank, N.A.), Applicant,
v.
Stanley R. PALOWSKY, Jr., Respondent.
No. 21380-CW.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1989.
*109 Hudson, Potts & Bernstein by James A. Routree and William T. McNew, Monroe, for Premier Bank, N.A., Melvin Rambin, and David Waguespack.
Winstead, McGuire, Sechrest & Minick by W. Mike Baggett and Jeff Joyce, Dallas, Tex., Cook, Yancey, King & Galloway by F. Drake Lee, Shreveport, George M. Wear Jr., C.A. Martin, III, Monroe, for Herschel Sullivan.
Theus, Grisham, Davis & Leigh by J. Michael Hart, Monroe, for Stanley R. Palowsky, Jr.
Before MARVIN, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
This case is before the court pursuant to our grant of a writ application filed by the plaintiff, Premier Bank, N.A. [formerly Ouachita National Bank (ONB) in Monroe], Melvin Rambin and David Waguespack. The applicants sought review of the district court's interlocutory judgment in which it refused to quash subpoenas duces tecum which were issued at the request of the defendant, Stanley R. Palowsky, Jr. The defendant caused subpoenas to be served upon Melvin Rambin, president of Premier, and David Waguespack, the son-in-law of Charles McCoy, the Chairman of the Board of Premier Bankcorp. Through the issuance of these subpoenas, the defendant sought discovery of bank records concerning loans made by the Louisiana National Bank of Baton Rouge, Louisiana (which was later merged into Premier) to Mr. Waguespack and/or his partnerships, as well as information relating to a commitment letter issued to Financial Plaza Partnership. (Neither Mr. Waguespack or Financial Plaza Partnership is a party to or has a direct connection to the present lawsuit.)

FACTS
By way of background, and prior to the institution of the present suit, the record indicates that the bank made numerous loans in connection with the development of a tract known as the North Pointe Subdivision in Monroe. The present defendant, Stanley Palowsky, was one of a number of borrowers who executed promissory notes to the bank in connection with the development of the subdivision. As a result of disputes between the bank and the developers of the subdivision, the developers, including Palowsky, filed a suit against the bank for damages, Gulf States Land and Development, Inc., et al v. Ouachita National Bank, No. 88-978. That suit is still pending and undecided.
Subsequently, in August of 1988, the bank filed the instant suit against the defendant to recover more than $800,000 owed on five different, unsecured promissory notes. The notes were accelerated because payments on four of the notes were past due and because the defendant had failed to furnish current financial *110 statements to the bank as required by the terms of his notes.[1]
The defendant filed an answer and a reconventional demand. In his reconventional demand, the defendant asserted that in retaliation for the other lawsuit which he had filed against the bank, the bank had created a situation of default so it could sue the defendant and bring about his financial ruin.[2] He further alleged that he was promised a position as a director of ONB and he purchased stock with some of the proceeds of the loans in furtherance of this objective. The defendant later filed an amended answer and cross-claim, alleging that the plaintiff and other named parties knew or should have known that he would not be elected as a director. In a supplemental and amending answer and reconventional demand, the defendant alleged that the bank violated certain federal securities laws.
On November 14, 1988, the bank filed a motion for summary judgment. In June of 1989, while the motion for summary judgment was still pending, the defendant caused subpoenas and subpoenas duces tecum to be issued, directing Rambin and Waguespack to appear and produce documents concerning the loans and financial transactions in which the bank had dealt with Waguespack and Financial Plaza. Rambin and Waguespack were directed to appear with the documents at a hearing on a motion to compel which was already scheduled for July 13, 1989. (The bank contends that the subpoenas were issued in an attempt to put off the hearing on the motion for summary judgment.)
A motion to quash the subpoenas was filed by the bank, Rambin and Waguespack. A hearing on the motion to quash was held on July 11, 1989. The court ruled the next day. The court held that Rambin and Waguespack were not required to appear in person but otherwise denied the motion to quash, thus, requiring the bank to produce the subpoenaed financial data and loan files of Waguespack and Financial Plaza, neither of whom are parties to the instant suit between the bank and Mr. Palowsky.
As a result of the trial court's refusal to quash the subpoenas, the bank, Waguespack and Rambin filed this writ application. On August 31, 1989, this court granted writs and a partial stay.
The bank, Rambin and Waguespack contend that the subpoenaed documents are not relevant to the merits of this suit. At the time the loan was made to Waguespack by Louisiana National Bank in Baton Rouge, it and ONB (which made defendant's loans in Monroe) were separate entities; their merger into Premier occurred subsequently. The writ applicants argue that each loan transaction is unique, and that numerous different factors influence how each customer is treated. They further contend that the bank records are confidential, and that the defendant must show, not only that they are relevant to issues involved in the lawsuit, but he must also show good cause for their production.
The defendant argues that he needs the subpoenaed records in order to prove the bank committed an abuse of rights against him by treating him differently from other customers such as Waguespack, who had a non-performing debt of $5,000,000 upon which the bank had not foreclosed. As to the bank records of Financial Plaza, also an unrelated matter, the defendant argues that Financial Plaza had a dispute with the bank involving a commitment letter allegedly issued by the bank; he seeks to examine the bank's treatment of that transaction. In general, the defendant contends that the information may support his theory that the bank's suit against him was retaliatory and its filing constituted an abuse of rights. He also maintains that LSA-R.S. 6:333 allows discovery of the records and that he is willing to sign any reasonable protective order to protect confidential materials.
*111 In this court, separate reply briefs were filed by Waguespack, Premier and Rambin. They argue that the defendant's contention that the bank created the default situation (accelerating one of the notes due to the defendant's refusal to submit a current financial statement) ignores the fact that four of the five notes were past due at the time suit was filed and that the other note became due one month later. (They also allege that on August 2, 1989, summary judgment was granted in the bank's favor on four of the notes, one of which was the note accelerated due to the defendant's refusal to furnish a current financial statement.) The writ applicants further contend that LSA-R.S. 6:333 assumes that the financial records sought are relevant to the litigation at issue, and that compliance with the statute does not supercede LSA-C.C. P. Art. 1422, requiring relevancy in discovery proceedings. Waguespack also argues that the subpoena violates his constitutional right to privacy, and that his constitutional right should prevail over the defendant's right to "fish around in banking records of unrelated third parties."

DISCOVERY OF BANK RECORDS OF NON-PARTIES
The exclusive method by which a litigant may obtain customer records from a bank is found in LSA-R.S. 6:333. At the time of the plaintiff's discovery request, the statute provided, in pertinent part, as follows:
A. A bank shall disclose financial records of its customers pursuant to a lawful subpoena, summons, or court order served upon one of the registered agents for service of process of the bank only if the bank is furnished by the person requesting the subpoena, summons, or court order with an affidavit that such subpoena, summons, or court order has also been served upon the customer whose records are sought at least ten days prior to the date on which the records are to be disclosed. No bank, director, officer, employee, or agent thereof, shall be held civilly or criminally liable for disclosure of the financial records of such a customer pursuant to a subpoena, summons, or court order which on its face appears to have been issued upon lawful authority and is accompanied by such an affidavit.
* * * * * *
C. Prior to making disclosure, the bank shall be reimbursed by the requesting person for the reasonable cost incurred or to be incurred by it in the course of compliance, including but not limited to document and reproduction costs, personnel costs, and travel expenses.[3]
The writ applicants argue persuasively that this statute presumes that the requested documents must be "relevant to the subject matter involved in the pending action." LSA-C.C.P. Art. 1422. Although the scope of discovery is to be liberally construed, it is not limitless. We cannot give credence to the notion that the legislature, through its passage of R.S. 6:333, intended to allow any person to indiscriminately foray through another individual's banking records upon a whim.
Additionally, we observe that LSA-C.C. P. Art. 1354, which deals with the issuance of a subpoena duces tecum, has been interpreted as being limited to information that is relevant or necessary to the case before the court. Bank of New Orleans and Trust Company v. Reed Printing and Custom Graphics, Ltd., 399 So.2d 1260 (La.App. 4th Cir.1981).
While liberal pretrial discovery should be encouraged, it must not be conducted without regard to the rights of the party against whom it is invoked to be protected against undue hardship, loss, damage, annoyance, or embarrassment. LSA-C.C.P. Art. 1426; Albright v. Prentice, 425 So.2d 336 (La.App. 3rd Cir.1982), writ denied 430 So.2d 84 (La.1983).
In several cases, the courts have acknowledged the importance of the confidentiality of personal financial information. *112 Such personal financial information is not to be made public except to satisfy important rights of others or an overriding public interest in the disclosure. See Plaquemines Parish Commission Council v. Delta Development Company, Inc., 472 So.2d 560 (La.1985).
In Greathouse v. Greathouse, 517 So.2d 380 (La.App. 5th Cir.1987), the appellate court required the production of the bank records of a friend of the husband for an in camera inspection because they were deemed relevant to the wife's search for community funds. The court ordered that the trial court place safeguards on the production of the records to protect both the friend's right to banking privacy and the wife's right to search for community funds. However, the court refused to allow the wife to subpoena the friend's business records unless the wife could show a more direct connection between those records and the community funds. Thus, the court clearly demonstrated the need for relevancy and good cause.
In their interpretation of the federal rules of discovery, from which our rules of discovery originate, federal courts have also required a strong showing of relevancy before allowing the discovery of the financial affairs of third persons. For example, the situation found in the instant case is comparable to that presented in In re Fontaine, 402 F.Supp. 1219 (E.D.N.Y. 1975). There, the plaintiff finance company sought a determination as to whether the bankrupt defendant's debt was dischargeable where credit had been extended in reliance upon false statements made in the defendant's credit application. The defendant sought production of all loan applications received by the plaintiff in a three-month period, contending that the production of the records of these third parties would show that in other cases the plaintiff had failed to rely on the same sort of false information that the plaintiff had admittedly placed in his loan application. In addition to finding that the discovery request was unduly burdensome because of the large volume of applications, the court also found that the material sought was irrelevant. The court stated:
Moreover, failure to rely on similar false statements, if true, is no evidence that there was no reliance in this particular instance especially in view of the fact, as stated by plaintiff, that each loan is a separate entity and is considered apart from previous applications. Consequently, there is no likelihood that useful evidence might be uncovered which is relevant to the subject matter.
While the standard of relevancy is a liberal one, it is not so liberal as to allow a party "to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."
[Citations omitted.]
By analogy, we note that in cases involving discovery of income tax returns, which are similar to bank records because of their confidential nature and the highly personal character of their content, the courts have required a significant showing of relevancy before permitting discovery. The court should be "very cautious in permitting [income tax returns'] inspection and copying. Such action should be authorized only after the court is convinced both of its relevancy and necessity for the prosecution of the plaintiff's suit." Bianchi v. Pattison Pontiac Company, 258 So.2d 388 (La.App. 4th Cir.1972). The courts have held that because income tax returns are confidential in nature and are of a personal character, good cause must be shown for their production. Simon v. Fasig-Tipton Company of New York, 524 So.2d 788 (La.App. 3rd Cir.1988), writs denied, 525 So.2d 1048, 1049 (La.1988).
Therefore, we conclude that in order to require the production of bank records over objection, particularly in the case of third-party non-litigants, a party seeking production must make a showing of relevancy and of good cause for production.

Abuse of Rights
Palowsky alleges that he requires production of the bank records in question *113 in furtherance of the abuse of rights claim he has asserted against the bank.
The abuse of rights doctrine may only be applied when one of the following conditions is met:
1. If the predominant motive for exercising a right was to cause harm;
2. If there was no serious or legitimate motive for exercising the right;
3. If the exercise of the right is against moral rules, good faith, or elementary fairness;
4. If the right is exercised for purpose other than that for which it is granted.
Addison v. Williams, 546 So.2d 220 (La. App. 2d Cir.1989); Truschinger v. Pak, 513 So.2d 1151 (La.1987); Illinois Central Gulf Railroad Company v. International Harvester Company, 368 So.2d 1009 (La. 1979).
Palowsky contends that the bank filed suit on his five unsecured promissory notes as a retaliatory measure. He seeks the production of Waguespack's records to determine whether he was treated in a less favorable manner than Waguespack, who also had an outstanding loan and who is the son-in-law of a former chairman of the board of Premier Bankcorp. Palowsky seeks Financial Plaza's records in order to evaluate the manner in which the bank handled Financial Plaza's commitment letter.
As a cornerstone to these assertions, Palowsky contends that the bank is obligated to treat all customers equally. However, he fails to cite, and we are unable to discover, any authority for this proposition. To the contrary, it would appear that each bank transaction is wholly unique depending upon its individual facts and circumstances.
For a bank to file suit on a promissory note which is, by its own terms, past due, does not constitute an abuse of rights. One of the primary functions of a banking institution is to conduct its financial affairs in a responsible manner so as to remain solvent. In order to do so, it may exercise its contractual rights against individuals who have borrowed money from it.
Upon the showing made, we cannot say that Palowsky has demonstrated relevancy and good cause for the production of the records pursuant to his theory of abuse of rights.

Financial Plaza's Bank Records
The defendant contends that Financial Plaza has not filed an objection to the subpoena, and the bank has no standing to move to quash that subpoena.[4] Palowsky argues that LSA-R.S. 6:333 does not allow the bank to object to the request for production of Financial Plaza's records when Financial Plaza itself has made no such objection.
As previously noted, LSA-R.S. 6:333 is the only means by which bank records may be obtained. A fair reading of the statute demonstrates that it contemplates a situation wherein the bank is only a custodian of bank records sought by litigants, or, put differently, the bank is an entity which is not a party to the lawsuit. The actual situation of the case before us is substantially differentthe bank is a party to the lawsuit and the customer is an independent entity which is not a litigant. Thus, the bank in the instant case has a clear and undisputable interest in raising an objection to the relevancy of the request for production of Financial Plaza's records. If, as the bank alleges, the request is a mere dilatory tactic, the banknot the customer alonesuffers detrimental effects as a result of the request.
Thus, we find that the bank has standing to object to the production of the Financial Plaza records. Based upon the showing made and the foregoing discussions, we *114 find the requested materials are not relevant to the instant proceedings.[5]

Waguespack's Bank Records
Waguespack asserts that Palowsky's request for his bank records amounts to an invasion of his constitutional right to privacy. However, we find it unnecessary to address this contention as our discussion of the relevancy of the documents is sufficient to resolve the issue.
Clearly, Waguespack's rights in the confidentiality of his banking records must be weighed against Palowsky's right to conduct relevant discovery proceedings. As relevancy is implicit in LSA-R.S. 6:333, we must consider whether the material sought by Palowsky could be "reasonably calculated to lead to the discovery of admissible evidence." LSA-C.C.P.Art. 1422.
In the instant case, we find that Palowsky has failed to make an adequate showing that Waguespack's bank records are relevant to Palowsky's claims against the bank. As previously noted, the bank is not bound to treat all customers in an identical fashion. The fact that the bank may or may not have foreclosed upon a completely different and thoroughly unrelated loan which it made to a total stranger to this litigation is not relevant under the facts presented here.

CONCLUSION
Based on the foregoing, we reverse the trial court judgment ordering Premier Bank to produce the bank records of Financial Plaza and Waguespack. The writ is hereby made peremptory, and the motion to quash is hereby granted. Costs are assessed to the defendant.
WRIT MADE PEREMPTORY; MOTION TO QUASH GRANTED.
NOTES
[1] Shortly after suit was filed, the fifth note also became past due.
[2] Two other lawsuits were filed by Ouachita National Bank against Gulf States, and some of the developers, including Palowsky, No. 88-3110 and No. 88-4484.
[3] This article was amended by Acts 1989, No. 779, to add the additional provision that release of the bank records be conditioned upon the bank not receiving notice of legal action by the customer to restrain the release of the records.
[4] The writ applicants contend that the Financial Plaza records are sought in conjunction with another lawsuit, ONB v. Gulf States Land and Development, Inc., et al, No. 88-3110, which is not even connected to the lawsuit in which the subpoena duces tecum was issued. However, Palowsky contends that discovery has been conducted jointly in the two cases. We note that the caption of the subpoena in question clearly bears the number and name of the suit between ONB and Palowsky.
[5] We also note that Palowsky apparently did not fully comply with R.S. 6:333 because the record indicates that no affidavit of notice to the customer was attached to the subpoena served upon the bank for either Financial Plaza's records or Waguespack's records.