570 So.2d 114 (1990)
OUACHITA NATIONAL BANK (PREMIER BANK, N.A.), Plaintiff/Appellee,
v.
Stanley R. PALOWSKY, Jr., Defendant/Appellant.
No. 21805-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
*115 Theus, Grisham, Davis & Leigh by J. Michael Hart, Monroe, for defendant appellant Stanley R. Palowsky, Jr.
George M. Wear, Jr., Monroe, for third-party defendant, Herschel Sullivan.
F. Drake Lee, Shreveport, for Premier Bank.
Hudson, Potts & Bernstein by James A. Rountree, William T. McNew, Monroe, Winstead, McGuire, Sechrest & Minick by W. Mike Baggett, Dallas, Tex. by Jeff Joyce, Houston, Tex., for appellee Ouachita Nat. Bank in Monroe.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Defendant, Stanley R. Palowsky, appealed the partial summary judgment granted by the trial court in favor of plaintiff, Ouachita National Bank in Monroe, now Premier Bank, N.A. (ONB) in the action by plaintiff for the collection of certain promissory notes executed by defendant. Finding no error, we affirm.

Issues Presented
On appeal, defendant presents the following assignments of error:
1) Whether the issuance of promissory notes contrary to the provisions of Regulation U of the Federal Securities Exchange Act gives rise to void obligations;
2) Whether the insertion of the words "on demand" in a note is a material *116 alteration which renders the note void; and,
3) Whether defendant was fraudulently induced to sign certain promissory notes.

Factual Context
These voluminous and factually complex proceedings arose from plaintiff making numerous loans in connection with the development of a tract known as North Pointe Subdivision in Monroe. Defendant was one of a number of borrowers who executed promissory notes to the bank in connection with the development of the subdivision. Due to various disputes between the bank and developers of the subdivision, the developers, including Palowsky, filed suit against the bank for damages. Subsequently on August 15, 1988, the bank instituted this proceeding for the collection of five promissory notes, naming Palowsky as defendant.
In its petition, the bank alleged Palowsky was indebted to it for $805,217.57. Plaintiff asserted it was the holder of the following notes executed by defendant:
1) Note No. 22048 for $118,334.17, dated November 9, 1987 (A);
2) Note No. 25822 for $440,000, dated December 16, 1987 (B);
3) Note No. 93149 for $30,000, dated March 11, 1988 (C) (originally incurred on March 10, 1986);
4) Note No. 96082 for $45,000, dated September 28, 1987 (D) (originally incurred on July 25, 1986); and,
5) Note No. 99733 for $120,000, dated October 9, 1987 (E). (Note E is not an issue in this appeal).
Plaintiff contended the above described notes were due as the result of defendant's failure to furnish current financial statements as required by defendant's contract with plaintiff and Notes A, B, D and E were past due. Plaintiff stated it had made amicable demand upon defendant to no avail.
Among numerous allegations in his answer and reconventional demand, defendant alleged that during the period of 1983-1984 he was informed by various representatives of ONB that he was a candidate to be placed on the Board of Directors of the bank. Defendant asserted he was advised by the bank representatives that in order for him to be more acceptable as a member of the Board he would be required to own stock in ONB. Accordingly, he made various acquisitions of stock based upon the representations of R.L. Vanderpool, Jr., President of ONB at that time, and Herschel Sullivan, a member of the Board of Directors. Defendant further alleged he was advised by the representatives, including Vanderpool and Sullivan, that any such acquired stock would become very valuable in the future, and based upon these representations, defendant was induced by these individuals to acquire the stock for which some of the indebtedness sued upon was incurred. Defendant also contended that the actions of ONB were part of a continuing and ongoing series of actions designed to bankrupt him and all of his projects which were previously financed with ONB. Defendant also filed a third-party demand naming as third-party defendants Vanderpool and Sullivan, alleging that based upon assurances as to the values of stock in ONB he was fraudulently induced to acquire the stock to be on the Board of Directors of the bank.
The record demonstrates that notes A and B were actually the consolidation of numerous other notes. Note A for $118,334.17 was the consolidation of the following three notes:
1) Note No. 94932 for $20,000 executed on May 13, 1986;
2) Note No. 92401 for $60,000 executed on February 10, 1986; and,
3) Note No. 87138 for $380,000 executed on August 13, 1985.
Defendant paid $347,181.62 on Note No. 87138 on September 18, 1985, leaving a balance of $38,334.17 for this note. Note B for $440,000 was the consolidation of the following four notes:
1) Note No. 88041 for $260,000 executed on September 10, 1985;
2) Note No. 90605 for $50,000 executed on December 10, 1985;

*117 3) Note No. 90889 for $20,000 executed on December 19, 1985; and,
4) Note No. 91529 for $110,000 executed on January 9, 1986.
It appears from the evidence that most of these loans were for the purpose of "construction" and defendant admitted in answers to interrogatories that his signature on the notes was genuine. Notes A, C, D and E were all payable 182 days after the date of execution, whereas Note B was payable on demand.
On November 14, 1988 plaintiff filed a motion for summary judgment on the five promissory notes. Plaintiff alleged that at the time suit was filed Note C was in default only because of defendant's refusal to submit a current financial statement. However, it was now past due as were all of the other notes which were sued upon. Plaintiff asserted there were no genuine issues of material fact as to defendant's liability to plaintiff and plaintiff was entitled to summary judgment as a matter of law.
The affidavit of Vanderpool was submitted in connection with plaintiff's motion for summary judgment. Affiant stated he was in charge of the records of ONB relating to defendant and that the affidavit was given on the basis of his personal knowledge derived from the bank's business records. Affiant described each of the notes and stated they were all past due and owing and, additionally, in default as defendant failed and refused after numerous requests to provide current financial statements.
Defendant opposed plaintiff's motion for summary judgment, alleging that material disputes of fact existed with respect to the indebtedness sued upon by ONB. Among his allegations, defendant contended Vanderpool had not personally dealt with defendant in the handling of his loans and the affidavit was also allegedly incorrect insofar as the purpose of the loans was stated. Defendant again asserted he was fraudulently induced to enter into the loans based upon statements made by the officers of ONB and was induced to buy stock by these misrepresentations.
In his affidavits, which were submitted in connection with his opposition to the summary judgment, defendant alleged that the purpose of the notes as set forth in Vanderpool's affidavit was totally inaccurate and incorrect as the loan proceeds were not used for construction or equipment but, to the contrary, a large portion of the loans was used for the acquisition of stock. Defendant stated he had never had any personal banking relationship with Vanderpool nor had Vanderpool ever been in charge of his accounts or had any dealings with defendant concerning those accounts. He further contended this proceeding was only instituted by ONB after defendant and others filed suit against the bank for its default in another transaction. Defendant also stated that the bank would receive weekly reports which showed checks issued on accounts in ONB in individual amounts in excess of $10,000. Defendant wrote checks in excess of $10,000 for each of his stock acquisitions and stated that Vanderpool and other bank officials would have had to have been in a position to have seen the purpose of the checks, in particular, the acquisition of the stock.
In June 1989, while plaintiff's motion for summary judgment was pending, defendant caused subpoenas and subpoenas duces tecum to be issued seeking certain individuals to appear and produce various financial documents. After the trial court's refusal to quash the subpoenas, this court granted supervisory writs on the application of ONB and the individuals to consider only the discovery issue. After reviewing the matter, we reversed the judgment of the trial court and granted the motion to quash. See Ouachita National Bank in Monroe v. Palowsky, 554 So.2d 108 (La. App. 2d Cir.1989).
On March 20, 1989 plaintiff filed a supplemental memorandum in support of its motion for summary judgment, alleging there were no material facts in dispute. Plaintiff noted defendant had admitted his signature and the genuineness of all of the promissory notes which had been sued upon and did not dispute having received the proceeds of the notes. The only thing *118 defendant denied was the purpose of some of the loans for which the promissory notes were issued. Plaintiff alleged that, although defendant's answers to interrogatories and the documents which he had produced in discovery contradicted his assertions concerning the use of borrowed funds, this did not amount to a disputed issue of material fact. Plaintiff argued it simply did not matter how defendant had used the money he had borrowed from ONB. It further contended that defendant's allegations as to being induced into buying stock to be considered favorably for a position on the bank's Board of Directors was a meaningless consideration in the context of this motion for summary judgment. Plaintiff noted that attached to defendant's supplemental answers to interrogatories was a schedule which listed the dates upon which defendant had purchased bank stock. A comparison of the attachment and the dates of the extension of credit by the bank revealed little or no correlation between the loans and stock purchases.
On April 4, 1989 defendant filed an amended answer and cross-claim against third-party defendants Vanderpool and Sullivan. Defendant alleged that ONB and third-party defendants had committed violations of La.R.S. 51:712 et seq. Further ONB, acting by and on behalf of Vanderpool and Sullivan, knew or should have known at some point in time that defendant would not be a candidate for a member of the Board of Directors despite his acquisition of stock and did not inform him of that fact and of the true financial position of the merged lending institution while defendant was acquiring bank stock.
A supplemental affidavit of Vanderpool was filed on behalf of ONB wherein Vanderpool stated that the bank officer who was directly in charge of the account of defendant prior to March 1988 was no longer employed by the bank. In the latter part of 1987, Vanderpool began dealing directly with defendant on various banking transactions and no extension of credit was made after affiant began dealing directly with defendant. Vanderpool stated that all of the bank's records relating to the various transactions between defendant and the bank were under his supervision and control and the affiant attested that the principal amount of each note was advanced to defendant and he received those proceeds and used them for his own purposes.
On May 15, 1989 defendant filed a supplemental and amending answer and reconventional demand in which he stated that for several years borrowings were made with ONB for the purpose of acquiring over-the-counter stock traded on the national exchange. Defendant alleged that on each occasion when monies were borrowed for stock acquisition, the lending officer of ONB was advised as to the specific purpose for which the borrowing was to be made, that is, to acquire bank stock. Defendant stated that only recently had he learned that someone on behalf of ONB would place the proper stated purpose on the note and then later change the stated purpose of "stock" to "construction" by "whiting" over the word "stock" and typing "construction" and in other cases deliberately misstating the purpose. Defendant never informed ONB representatives when he was making a loan for the purpose of stock acquisition that it was to be noted as "for the purpose of construction" and on most occasions when a loan was made, the funds were deposited directly into an investment account and stock was immediately purchased. He further alleged he was required by ONB representatives to pledge the stock of his special account through which the stock was acquired to secure his indebtedness to the bank. Defendant contended that the actions of ONB and its officers in changing these notes was a deliberate attempt to circumvent the requirements of Regulation "U", 12 C.F.R. § 221 et seq., adopted pursuant to the authority of the Federal Reserve System by the Securities Exchange Act of 1934. Defendant contended that the acquisition of the stock purchased under this arrangement constituted a margin stock as defined by Regulation "U" and that ONB in loaning monies for the acquisition of the stock violated the requirements of Regulation "U" both as to the amount and requirements of documentation *119 for making the loans to acquire the stock. Defendant argued that as the actions of ONB constituted a violation of Regulation "U", the promissory notes sued upon by plaintiff should be declared null and void.
Defendant filed a supplemental affidavit stating that on each instance when he acquired stock the funds would be deposited in an account and a check written showing the specific purpose for the check. Defendant stated that on each occasion he advised his loan officer of the purpose of his purchase and would truthfully, correctly and accurately state the purpose of the loan. Defendant stated at the time the notes were executed he had no personal knowledge of any changes or misstatements of true purpose of the loan by the ONB officers. Defendant further stated he had always furnished financial statements to ONB but was advised by plaintiff's attorney that if a financial statement was furnished it would be used against him should he try to declare bankruptcy. He was never requested to furnish updated current financial information at the time of making any of his loans nor was he requested to furnish updated current income statements. Defendant alleged these statements were only requested after a conflict developed with ONB. Defendant stated that Note B for $440,000 had been materially altered with respect to the due date in that highlighting appeared over the words "on demand" and on the rear of the note under "special instructions" and such highlighting was not on the note when it was signed. Defendant asserted that ONB retained his checkbook and many times would fill in various note payments upon which they would direct the funds to be paid. He stated that on each occasion when a construction loan was made with ONB the entire borrowing was immediately paid off following completion of the construction.
After reviewing the evidence, the trial court partially granted plaintiff's motion for summary judgment on August 2, 1989, awarding plaintiff judgment against defendant on Notes A, B, C, and D. In oral reasons for judgment, the trial court stated there had been nothing shown to it why plaintiff would not be entitled to judgment on the notes, with the exception of Note E which the court had previously ruled in other related litigation involved an issue of fact.
Thereafter, defendant filed a motion for a new trial alleging the trial court erred in finding no genuine issues of material fact. Defendant contended that material disputes of fact existed as to whether there was a material alteration of Note B, the original purpose of the loans, fraudulent inducement and certain federal defenses. In connection with the motion for a new trial, defendant submitted the affidavit of his wife, Carol Palowsky, wherein the affiant sought to demonstrate through community banking records the stock loans and purchases made by defendant, beginning on February 7, 1984, and the repayment of those loans by ONB by use of construction proceeds. The trial court denied defendant's motion for a new trial in a judgment dated December 6, 1989.

Legal Principles
The granting of a motion for summary judgment is appropriate if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with any affidavits filed, show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. The burden of proof in a motion for summary judgment is upon the mover to establish there are no genuine issues of material fact. This burden is a great one. Only when reasonable minds must inevitably concur is a summary judgment warranted and any doubt should be resolved in favor of a trial on the merits as the summary procedure should be used cautiously and sparingly. In considering a motion for summary judgment, the papers supporting the mover's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the mover had satisfied his burden. Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981); Ebarb v. Erwin, 530 So.2d 1166 (La.App. 2d Cir.1988); Finley v. Safeco Insurance Company, 511 So.2d 457 *120 (La.App. 3d Cir.1987); Rockwood Insurance Company v. Workers' Compensation Second Injury Board, 508 So.2d 621 (La.App. 2d Cir.1987); Dement v. Red River Valley Bank, 506 So.2d 1329 (La.App. 2d Cir.1987), and Ledbetter v. Myers, 438 So.2d 700 (La.App. 2d Cir.1983).
A fact is material if its existence or non-existence may be essential to plaintiffs cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect the litigant's ultimate success or determine the outcome of the legal dispute. Hakim v. Albritton, 552 So.2d 548 (La. App. 2d Cir.1989).
Summary judgment as a matter of law will be granted if the disputed issues of fact are so patently insubstantial as to present no genuine issues. Merely formal allegations without substance will not preclude summary judgment. Ultimate or conclusory facts or conclusions of law may not be utilized on a summary judgment motion. Sizeler Property Investors, Inc. v. Gordon Jewelry, 550 So.2d 237 (La.App. 4th Cir.1989), writ denied, 551 So.2d 1327 (La.1989) and Jones v. American Bank & Trust Company, 387 So.2d 1360 (La.App. 1st Cir.1980).
The supporting and opposing affidavits submitted in connection with the motions for summary judgment must be made upon personal knowledge, setting forth such facts as would be admissible in evidence and must affirmatively show the affiant is competent to testify as to the matter stated therein. Newman v. General Motors Corporation, 524 So.2d 207 (La. App. 4th Cir.1988) and White v. National Surety Corporation, 436 So.2d 751 (La. App. 3d Cir.1983).

Violation of Regulation U
Throughout the proceedings, defendant has contended the bank would make "construction" loans to him and then require him to immediately deposit those funds back into a stock account in order to make stock purchases. Defendant contends that construction proceeds requested by him to pay his construction loans were taken by the bank and diverted by loan officers in order to cover loans which were made in violation of federal law. Defendant asserts that Regulation U requires banks to determine the purpose of all loans, especially when they involve the acquisition of over-the-counter stock. Defendant contends the burden of complying with Regulation U was upon plaintiff and that he never misled the bank as to the purpose of his loans. Defendant argues that not only did the bank fail to comply with Regulation U but it deliberately misstated the purpose of the loans. Defendant asserts that the loan officers took his funds from his construction projects, which he always paid promptly when the job was complete, and applied these proceeds to pay off stock notes. If the notes were truly construction loans, they remained unpaid due to the actions of the loan officers in diverting funds to pay off stock loans which were in violation of federal law. Defendant contends a primary issue of fact exists as to whether the notes which are the subject of this matter arose out of his borrowing to acquire ONB stock on the margin or whether these loans had as their purpose "construction" as set forth in the Vanderpool affidavit. Furthermore, contrary to the purpose of the notes as set forth in Vanderpool's affidavit, a large portion of the loans was used for the acquisition of ONB stock or stock in one of the related banking institutions that ultimately merged into Premier, all of which was known by the various officers and officials of ONB. Thus, defendant contends there is a serious dispute regarding the disposition of the funds which form the basis of the notes and this dispute is material to ONB's request for summary judgment.
Regulation U was promulgated by the Federal Reserve System pursuant to § 7 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78g. The purpose of Regulation U as stated in 12 C.F.R. § 221.1 is to impose credit restrictions upon banks that extend credit for the purpose of buying or carrying margin stock if the credit is secured directly or indirectly by margin stock. The bank may not extend more *121 than the maximum loan value of the collateral securing such credit as set by the Board in § 221.8.
The affidavits, answers to interrogatories and other discovery materials submitted in connection with the motion for summary judgment established that defendant's purchases of ONB stock were made in the time period from February 7, 1984 until November 15, 1984. The record reflects that defendant made purchases of stock in other banking institutions after November 15, 1984. The loans at issue herein as evidenced by the promissory notes were made during the time period beginning August 13, 1985 and ending July 25, 1986. Although Notes A and B actually represent the consolidation of seven smaller promissory notes, all of these notes were executed within this time period. As the ONB stock purchases were made by defendant in 1984 and the notes at issue herein were all executed in 1985 and 1986, it is clear there was no direct relationship between the making of these loans and the purchase of ONB stock.
In essence, the thrust of defendant's argument in regard to the alleged violation of Regulation U by ONB is that stock purchases made in 1984 were funded by loans from ONB, which loans were subsequently paid off by defendant under circumstances wherein defendant did not intend to pay off the stock loans. Defendant asserts that bank officers of ONB paid off stock loans when he actually intended to pay off other loans such as his construction loans made by the bank. Thus, defendant argues that since the stock loans which were allegedly made in violation of Regulation U in 1984 were improperly paid off by the diversion of funds by bank officers, he may employ any possible Regulation U defenses in the bank's action against him on any later loans which clearly had no relationship to the stock purchases as noted above. This argument is without merit.
Defendant relies upon the provisions of 15 U.S.C.A. § 78cc(b), which is a provision of the Federal Securities Exchange Act providing in essence that any contract made in violation of the act or of any rule or regulation thereunder shall be void. Regulation U, located at 12 C.F.R. 221 et seq., prohibits the bank from extending credit to purchase margin stock. On this basis, defendant contends that the loans at issue herein should be found void as being made in violation of Regulation U. However, 15 U.S.C.A. § 78cc(b) clearly imposes the penalty of nullity only on those contracts that are made in violation of law and because the specific notes at issue herein do not represent indebtedness for the purpose of purchasing margin stock, the provisions of that statute do not apply to these notes. We do not find these federal regulations were intended or can be interpreted to mean that once a bank violates the provisions in regard to one transaction with a customer, all future separate and unrelated transactions with that customer may be voidable. In other words, defendant is seeking to void his obligations on the notes which form the basis of this appeal by asserting defenses which he may have to past loan transactions with ONB. This is simply beyond the scope of the Federal Securities Exchange Act and the regulations thereunder.
In any event, there is significant jurisprudence which holds there is no private right of action under Regulation U. Specifically in the case of Bennett v. United States Trust Company of New York, 770 F.2d 308 (2d Cir.1985), cert. denied, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), the court held that no private right of action exists under Regulation U. In examining the provisions of Regulation U, the court concluded there was simply no evidence that Congress intended to create a private cause of action.
In summary, there is no genuine issue of material fact as to the disposition of the loan proceeds as the notes which form the basis of this suit were executed after defendant's purchase of ONB stock and therefore are not directly related to the stock purchases nor were these particular loans made in violation of Regulation U.

Fraud
Defendant, throughout these proceedings, has argued he was fraudulently *122 induced by representatives of ONB to make the stock purchases in that he was promised a seat on the Board of Directors of the bank if he would purchase bank stock and he was told the stock would greatly increase in value due to a possible merger of various banking institutions. Therefore, defendant argues he was fraudulently induced to execute Notes A, B, C and D on the basis of these representations.
This argument by defendant suffers from the same flaw as noted above in that the execution of the four promissory notes A-D was not directly related to defendant's purchase of ONB stock. Defendant asserts that since the bank allegedly committed fraud in convincing him to purchase bank stock in 1984, he should be entitled to use this claim of fraud to defend an action on promissory notes which were executed in 1985 and 1986 and are unrelated to the stock purchases. This argument is without merit.
It is elementary that fraud allegedly committed in one transaction may not be used as a defense in an action on an unrelated promissory note. That alleged fraud and the damage caused thereby would form a separate and distinct cause of action which defendant may pursue by separate suit or reconventional demand but it is not transformed into a defense to an unrelated promissory note.

Material Alteration of Note B
Defendant further contends there was a material alteration of the due date of Note B. He notes that all of the other notes executed by him were payable in 182 days whereas Note B was payable "on demand". It appears that the words "on demand" were highlighted on the front and back of the note in the special instructions section. Defendant argues the highlighting was not on the note when signed. In oral reasons for judgment the trial court indicated that had Note B been left blank as to the due date, it would have been a note due "on demand" anyway. Defendant contends that the question of material alteration constitutes a general issue of fact and therefore the summary judgment granted by the trial court was improper.
As noted by this court in Stanfield v. White, 535 So.2d 753 (La.App. 2d Cir.1988), writ denied, 536 So.2d 1199 (La. 1988), there can be no doubt that the adoption by Louisiana of La.R.S. 10:3-407(1), a provision of the Uniform Commercial Code, has changed the law such that an alteration which voids the obligation must be material and fraudulent rather than only material. Changes made with fraudulent intent may operate as a discharge. The party relying on an altered instrument has the burden to explain the alteration and the filling in of a blank in a written instrument presents a question of authority and not one of alteration. It has been held that an alteration of the interest rate is a material alteration and strikeovers and substitutions in the place of a strikeover are also clearly alterations. See also Bank of Greensburg v. Forrest, 520 So.2d 728 (La.1988).
La.R.S. 10:3-407 provides in pertinent part:
(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in
(a) the number or relations of the parties; or
(b) an incomplete instrument, by completing it otherwise than as authorized; or
(c) the writing as signed, by adding to it or by removing any part of it.
(2) As against any person other than a subsequent holder in due course
(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;
(b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.
(3) A subsequent holder in due course may in all cases enforce the instrument according to its original tenor, and when *123 an incomplete instrument has been completed, he may enforce it as completed.
Defendant's allegations with reference to the claim of material alteration are ambiguous at best. Defendant originally contended that the action of one bank officer in "highlighting" a couple of provisions on the note constituted a material alteration. Defendant subsequently asserted since his usual practice was to execute notes payable in 182 days, the fact that this note was payable on demand indicated that it was altered as to its due date. We note, however, that defendant's affidavit in support of this contention and in opposition to plaintiff's motion for summary judgment does not precisely state the nature of the alleged alterations. Viewed in a light most favorable to defendant, the best that can be said about his contention on the material alteration issue is that he speculates the note may have been materially altered as it differs in due date from the other notes. However, speculation and assumption are not sufficient to create a genuine issue of material fact. As noted earlier, merely formal allegations without substance or conclusory facts may not be utilized on a summary judgment motion. Defendant's speculation does not constitute a "fact" of sufficient evidentiary quality to support the conclusion there is a genuine issue of material fact.

Summary
The only issue before this court at this time is whether the trial court erred in granting plaintiff's motion for summary judgment on certain promissory notes which were admittedly signed by defendant. Defendant has raised as defenses to the action on these promissory notes claims which are more properly raised by separate suit or reconventional demand. Our holding with reference to Regulation U and fraud arguments advanced by defendant means only that these claims could not be used as viable defenses in regard to these promissory notes as the evidence established they were unrelated transactions. However, this summary judgment on the unrelated promissory notes, disregarding the defenses set forth by defendant, cannot and should not be interpreted as a judicial determination of the merit of these claims. If these matters have been properly and timely raised, defendant may still pursue these claims as separate causes of action or by reconventional demand against the bank. See La.C.C.P. Arts. 1038 and 1039.

Decree
For the reasons set forth herein, the judgment of the trial court is AFFIRMED at defendant's cost.
SEXTON, J., concurs.