630 So.2d 1359 (1994)
Dr. Thomas H. FIELDS, Jr. and Donna Ann Comeaux Fields, Plaintiffs-Appellants,
v.
William E. ROARK, et al., Defendants-Appellees.
No. 25426-CA.
Court of Appeal of Louisiana, Second Circuit.
January 19, 1994.
*1360 Davenport, Files & Kelly by Thomas W. Davenport, Jr., Monroe, for third party plaintiffs.
Shotwell, Brown & Sperry by V. Gerald Dean, Monroe, for third party defendant.
Before SEXTON, VICTORY and STEWART, JJ.
VICTORY, Judge.
Third party plaintiffs/appellants, David I. Burkett, the law firm of Dimos, Brown, Erskine, Burkett & Smith, and New England Insurance Company (collectively "third party plaintiffs"), appeal a summary judgment granted in favor of third party defendant/appellee, Premier Bank, N.A. We affirm.

FACTS
On January 10, 1984, Dr. Thomas H. Fields, Jr., and Donna Ann Comeaux Fields (the "Fields"), sold the Malibu West Apartments to William E. Roark and Janice McBride Roark (the "Roarks"), for the sum of $725,000.00. The Roarks paid the Fields $65,000.00 cash, assumed the balance remaining on two of the Fields' outstanding promissory notes and mortgages, and gave the Fields a $303,183.13 promissory note secured by a second mortgage on the property purchased. By letter dated January 10, 1984, the Fields also agreed that when the Roarks obtained their own permanent loan, they would subordinate their second mortgage to that of the lender, as long as the new mortgage did not exceed $575,000.00.
On March 14, 1984, the Roarks refinanced the mortgage indebtedness that was assumed, by borrowing $565,000.00 from Deposit Trust Savings Bank ("Deposit"). The Roarks paid the two previously assumed promissory notes and mortgages with a portion of the loan proceeds. Deposit was granted a mortgage as security for payment of the loan; and, as agreed, the Fields subordinated their mortgage to Deposit's.
In June 1985, the Roarks again decided to refinance the mortgage indebtedness through a federally backed loan, commonly referred to as a "Freddie Mac" loan. The Roarks submitted an application through Deposit, an authorized "Freddie Mac" lender. Since the federal regulations applicable to this type of loan prohibited any other mortgage encumbrance on the property being used as security, it was necessary for the Roarks to remove the Fields' second mortgage from the public records of Ouachita Parish, Louisiana.
At the time of the proposed "Freddie Mac" refinancing, approximately $272,000.00 was owed by the Roarks on the promissory note given to the Fields in 1984. The Fields did not want the balance of the promissory note paid in full due to certain undesirable tax consequences. Likewise, the Fields did not want to lose their secured status. In order to avoid the adverse tax consequences and to at least partially maintain the Fields' secured status, the Roarks agreed to pay the Fields *1361 $40,000.00 cash and issue a $232,000.00 promissory note, secured by the pledge of a certificate of deposit in the amount of $207,000.00. This arrangement would have resulted in the $232,000.00 remaining balance being unsecured only to the extent of $25,000.00. Then, according to third party plaintiffs, the Fields' special second mortgage was to be cancelled.[1]
The certificate of deposit to be pledged as partial security for the new $232,000.00 note could not be issued in the Fields' names because this may have constituted "constructive receipt" of the money, and, if so, triggered the adverse tax consequences. Thus, it was agreed that the $207,000.00 certificate of deposit was to be purchased from Ouachita National Bank ("ONB")[2], and issued in the Roarks' names. Thereafter, the certificate of deposit was to be pledged to the Fields.
In preparation for the refinancing, the Fields tendered the $303,183.13 promissory note to David I. Burkett ("Burkett"), the Roarks' attorney and a member of the law firm of Dimos, Brown, Erskine, Burkett & Smith ("the Dimos law firm").
At the "Freddie Mac" loan closing on August 28, 1985, the tendered promissory note was surrendered to Deposit's attorney. A check in the amount of $247,000.00, was made jointly payable to "DAVID I. BURKETT, attorney for Thomas H. Fields, Jr. and WILLIAM E. ROARK." According to the third party plaintiffs, the check was made out in this way at the direction of Mr. Tom B. King, the Fields' C.P.A., in order to avoid "constructive receipt" of the money and the adverse tax consequences.
The $247,000.00 check was deposited in the client trust account of the Dimos law firm. On August 30, 1985, a $40,000.00 check payable to "Dr. and Mrs. Thomas Fields" was drawn on the trust account. On September 3, 1985, the Roarks issued their promissory note for $232,000.00, payable to the Fields. Thereafter, Mr. Roark delivered the $40,000.00 check and the promissory note to Dr. Fields. The Fields' second mortgage was erased from the public records of Ouachita Parish, Louisiana.
On August 30, 1985, the Dimos law firm drew a second check on its trust account with American Bank & Trust Company, in the amount of $207,000.00, made jointly payable to "Ouachita National Bank and William E. Roark." The proceeds of this check were to be invested by Mr. Roark at ONB in a certificate of deposit to be pledged as partial security for the $232,000.00 promissory note given by the Roarks to the Fields.
On August 30, 1985, Mr. Roark presented the check for deposit to Mr. A.W. Hood, Jr., then ONB's Senior Vice President. At that time, Mr. Hood and ONB had no knowledge about the agreement between the Roarks and the Fields. Mr. Roark deposited the check, and the certificate of deposit was issued in his name.
Approximately two to three weeks after the transaction, Mr. Roark requested that Burkett prepare a draft pledge agreement. Burkett prepared the draft pledge agreement, which was presented to ONB's trust department. Thereafter, the trust department sent the draft back to Burkett because the terms did not meet the bank's approval. Burkett then forwarded the draft document to Mr. King, with the suggestion that Dr. Fields, as ONB's customer, intervene to have the bank prepare the document. However, no agreement was ever executed, and the certificate of deposit was never pledged to the Fields.
Sometime in June or July 1986, the Fields desired to obtain cash for payment of a certain obligation unrelated to the Malibu West Apartments. Mr. King contacted Mr. Roark to inquire whether a portion of the certificate of deposit could be "cashed in" for this purpose. Upon this inquiry, it became apparent that the certificate of deposit was no longer in existence because, during the preceding ten to eleven months, Mr. Roark had withdrawn the money for other purposes.
*1362 Shortly thereafter, the Roarks defaulted on the $207,000.00 promissory note. On February 10, 1987, the Fields filed suit against the Roarks to obtain judgment for the balance due. A judgment was eventually granted in their favor. Thereafter, the Roarks filed Chapter 7 bankruptcy; however, via an adversary proceeding in the bankruptcy court, this debt, with respect to Mr. Roark, was declared not to be dischargeable due to his fraud.[3]
On January 4, 1988, the Fields filed suit against Burkett, the Dimos law firm, and its professional liability insurer, New England Insurance Company ("New England"), for conversion, misrepresentation and damages. By supplemental and amended petition, filed August 19, 1988, Mr. Roark was also named as a defendant in the lawsuit.
On April 10, 1991, Burkett, the Dimos law firm and New England filed a third party demand, naming Premier Bank, N.A., the successor of ONB, as a third party defendant. The third party plaintiffs allege that if they are found liable on the primary demand, then ONB is liable for indemnity or contribution because it negotiated the $207,000.00 check, made jointly payable to Mr. Roark and ONB, without inquiry of or consultation with Burkett and/or the Dimos law firm.
On December 10, 1992, ONB filed a motion for summary judgment alleging that no fiduciary obligation and/or notice of the negotiation of the check was owed to Burkett or the Dimos law firm, and that any action against ONB on that basis had prescribed. The trial court granted summary judgment in favor of ONB, ruling that ONB was not under a duty to contact Burkett or the Dimos law firm prior to negotiating the check and crediting the Roarks' account with the proceeds derived therefrom. Third party plaintiffs, Burkett, the Dimos law firm and New England, appeal. We affirm.

DISCUSSION
In support of their argument that ONB is potentially liable because it had a duty to contact the Dimos law firm before negotiating and depositing the $207,000.00 check, made jointly payable to ONB and Mr. Roark, third party plaintiffs rely on City National Bank of Baton Rouge v. Louisiana Savings Bank & Trust Company, 216 La. 262, 43 So.2d 602 (1949). In that case, the president of L.S.U. obtained a loan from City National Bank of Baton Rouge ("CNB"), allegedly on behalf of the university. When the president informed CNB that he needed the loan proceeds to satisfy university obligations in New Orleans, a bank check in the amount of the entire loan was made payable to Louisiana Savings Bank & Trust Co. ("LSB & T"), a New Orleans bank. The next day, the check was presented to LSB & T by another individual, Mr. Brown. Without inquiry, LSB & T endorsed the check, and the proceeds were credited to Mr. Brown's personal account. He then immediately drew a check upon his personal account, to a brokerage firm.
Thereafter, L.S.U. repudiated the entire transaction, and CNB was forced to bear the loss. CNB sued LSB & T contending that it had no authority to pay the proceeds of the check to Mr. Brown, that LSB & T had a duty to insure that the proceeds were properly dispersed, and that LSB & T had a duty to insure that the funds were legally paid pursuant to CNB's direction. Citing numerous authorities from different jurisdictions, the Louisiana Supreme Court found that the check made payable only to LSB & T required that LSB & T at least make some inquiry of the drawer, CNB, before disbursing the funds to a third party individual, not named as a payee on the check.
In ruling on the motion for summary judgment in the instant case, the trial court distinguished City National. It found that the check in City National was payable to only one payee, a bank, and was presented to the payee bank for payment by an unrelated third person. In the case at hand, however, the check was made jointly payable to two payees, ONB and Mr. Roark, and the presenter, Mr. Roark, was not an unrelated third person. We agree with the trial court that City National is distinguishable.
Our review of the jurisprudence on this issue indicates both state and federal courts *1363 adhere to the rules and principles enunciated in City National. See Annotation, Liability of Bank for Diversion to Benefit of Presenter or Third Party of Proceeds of Check Drawn to Bank's Order by Drawer Not Indebted to Bank, 69 A.L.R. 4th 778 (1989); Annotation Liability of Bank Which Diverts Checks or Drafts Drawn to its Order to a Use Other than that of the Drawer, 82 A.L.R. 1372 (1933); and 9 C.J.S. Banks and Banking, § 340.
Most courts have found that when a drawer makes a check payable to a payee bank, to which the drawer is not indebted, the drawer intends to place the proceeds of the check into the custody and control of the payee bank. Thus, the payee bank is authorized to pay the proceeds of the check only to persons specified by the drawer, and the payee bank is under a duty to inquire into the authority of one other than the drawer to receive the proceeds.
However, these general principles are not without exception. Each case is factually distinct, and liability is not automatically imposed on the payee bank. For example, the payee bank may be deemed not liable in cases where the drawer of the check clothed the presenter with actual or apparent authority to receive the proceeds. See, e.g., Federal Savings & Loan Insurance Corporation v. First National Bank, 164 F.2d 929 (8th Cir.1947); Mayo Bros. Chemical Corp. v. Capital National Bank, 192 Miss. 293, 5 So.2d 220 (1941). Further, the payee bank is not bound to have knowledge of side agreements or contingencies relating to the proceeds of the check. See, e.g., Lasley v. Bank of Northeast Arkansas, 4 Ark.App. 42, 627 S.W.2d 261 (1982). Also, where the drawer's own negligence contributed to or caused the loss, the drawer's negligence should be considered before imposing liability upon a payee bank. See, e.g., Robbins v. Passaic National Bank & Trust Company, 109 N.J.L. 250, 160 A. 418 (1932). Finally, checks made payable only to the payee bank were considered "bearer paper," as defined by former LSA-R.S. 7:9(3).[4] The payee bank was deemed not liable since "bearer paper" is payable to any holder, and it was reasonable for the payee bank to conclude that the presenter, as holder, had an interest in the proceeds. See, e.g., Fidelity & Casualty Company of New York v. United States Fidelity & Guaranty Company, 81 So.2d 576 (La.App. 2d Cir.1955).
The instant case is atypical, falling outside the scope of the general rules set forth in City National. As the trial court found, the most prominent distinguishing factor here is that the check was made jointly payable to the order of two payees, Mr. Roark and ONB.
That the check here was made payable to both ONB and Mr. Roark is significant because this made it reasonable for ONB, as the payee bank, to infer from the face of the check that the drawer intended for Mr. Roark to have an interest in the proceeds. Cf. United States v. Sommer Corporation, 580 F.2d 179, 184 (5th Cir.1978). Unlike the presenters in City National, and the other cases that we have reviewed, Mr. Roark was not an "unrelated third person." Rather, he was the owner of the funds. His interest in the proceeds of the check was both legitimate and intended by the drawer thereof, and this is clearly evidenced by the fact that he was included as a payee on the check. A check made payable to two or more persons not alternatively is payable to all of them, and may be negotiated only by all of them. LSA-R.S. 10:3-116(b)[5]. This check could not have legally been negotiated without Mr. Roark's consent. Therefore, from both a legal and factual standpoint Mr. Roark was truly a related party. After ascertaining that neither Mr. Roark nor the Dimos law firm were indebted to it, ONB concluded that it had no interest in the proceeds of the *1364 check, and that Mr. Roark was the true payee.
Under the verbal agreement with the Fields, Mr. Roark was obligated to use the proceeds of the check to purchase a certificate of deposit to be pledged as security for the replacement note. The record reveals, and the parties do not dispute, that Mr. Roark purchased the certificate of deposit, but failed to pledge it to the Fields. Thus, the loss did not occur due to Mr. Roark's initial misapplication of the funds, ONB's failure to credit the funds to the appropriate account, or ONB's failure to issue the certificate of deposit to Mr. Roark. The loss occurred due to Mr. Roark's failure to pledge the appropriately issued certificate of deposit to the Fields, a condition unknown to ONB.
Burkett's affidavit submitted in opposition to the motion for summary judgment states that he prepared a draft pledge agreement at Mr. Roark's request, which was approved by Mr. King. Thereafter, according to both Burkett and Mr. Hood, the draft agreement was forwarded to ONB. Burkett's affidavit further states that Mr. Hood contacted him to inform him that the trust department would not accept the language of the agreement. The draft agreement was forwarded to Mr. King, and Burkett requested that he and Dr. Fields pursue having the pledge agreement executed. From this point forward nothing was done in regards to the pledging of the certificate of deposit. Apparently this final detail of the transaction "fell through the cracks."
The burden of preparing and executing the pledge agreement did not fall upon ONB. Rather, that burden fell upon the parties to the transaction, namely, the Fields, the Roarks and/or third party plaintiffs. ONB was not a party to the transaction between the Fields and the Roarks. Further, Mr. Hood's affidavit, submitted in support of the motion for summary judgment, shows that ONB had no knowledge, either actual or constructive, of the side agreement between them, and that ONB was unaware of the intended use of the proceeds of the check. Mr. Hood's affidavit also indicates that ONB was not notified previously of the transaction. All of these facts, accompanied by the attestations of Burkett, show that the onus of preparing and executing the pledge agreement was never placed upon ONB, and that the parties to the transaction did not contemplate that ONB would undertake this task, nor did ONB ever agree to do so.
ONB did all that is was required to do in light of the circumstances. It reviewed the face of the check and noted that Mr. Roark was a co-payee thereon. From this, and the fact that neither the drawer nor Mr. Roark were indebted to ONB, it properly inferred that Mr. Roark was the true party in interest. As intended by the drawer of the check, Mr. Roark was allowed to utilize the proceeds of the check to purchase the certificate of deposit with ONB. The trial court correctly concluded that ONB had no duty to contact the Dimos law firm or Burkett before negotiating the check and depositing the proceeds thereof in Mr. Roark's personal account.
Third party plaintiffs also claim that ONB is potentially liable because it breached a contractual relationship that existed between it and the Dimos law firm. Again, this claim is based upon the City National case, wherein the Louisiana Supreme Court found, in deciding a plea of prescription, that a contractual relationship existed between the payee bank and the drawer. However, in resolving the issue, the court discussed and relied upon cases involving a bank's contractual relationship with a "depositor." City National, supra, 216 La. 262, 43 So.2d at 608-609.
Acknowledging the well known principle that banks and depositors are contractually bound to one another, we find that no such relationship existed between ONB and the Dimos law firm. The Dimos law firm held no accounts with ONB and was not a depositor with ONB, therefore no such relationship was established.
It is well settled that the granting of a motion for summary judgment is appropriate if, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there are no genuine issues of material fact, and the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Bowen v. *1365 Skillman, 622 So.2d 1200 (La.App. 2d Cir. 1993); Ouachita National Bank v. Palowsky, 570 So.2d 114 (La.App. 2d Cir.1990). Only when reasonable minds must inevitably concur is a summary judgment warranted, and any doubt should be resolved in favor of a trial on the merits as summary procedure should be used cautiously and sparingly. Id.
The burden of proof initially rests upon the party moving for summary judgment to show convincingly, either by affidavits, depositions or other admissible proof, that there is an absence of a genuine issue of material fact between the litigants. Until mover discharges this burden, the obligation of countering by the adverse party does not arise. Once the movant has discharged this burden, the adverse party must show by admissible evidence that a genuine issue of material fact does exist. People's Homestead Federal Bank For Savings v. Laing, 569 So.2d 271 (La.App. 2d Cir.1990). In effect, after the mover files sufficient documentation to support the motion for summary judgment, the burden shifts to the opponent to prove that material facts are at issue. Langley v. Oxford Chemicals, Inc., 559 So.2d 520 (La.App. 2d Cir.1990).
Applying these precepts to the present case, we find, as did the trial court, that ONB has satisfied its burden of proving that third party plaintiffs cannot recover a judgment against it as a matter of law, because the undisputed facts show ONB owed them no duty with regard to the $207,000.00 check other than to make the funds available to the co-payee, Mr. Roark. Therefore, the trial court's granting of summary judgment was appropriate, and is affirmed.[6]

DECREE
For the foregoing reasons, the summary judgment is affirmed. All costs of this proceeding are assessed to third party plaintiffs.
AFFIRMED.
SEXTON, J., concurs.
NOTES
[1] The Fields dispute whether they agreed to have their second mortgage cancelled; however, this question is of no consequence to a resolution of the issue presented by this appeal.
[2] Ouachita National Bank is now Premier National Bank, N.A.
[3] The Bankruptcy Court specifically found that Mrs. Roark was not fraudulent.
[4] The applicable definition of "bearer," as amended by Act No. 92 § 1 of 1974 and located at former LSA-R.S. 10:3-111, does not include a provision similar to former LSA-R.S. 7:9(3). The check at issue in the instant case is clearly not bearer paper.

Effective January 1, 1994, bearer paper is defined in LSA-R.S. 10:3-109.
[5] By Act No. 1133 § 3, effective January 1, 1994, LSA-R.S. 10:3-116(b) was revised and amended. It is now located at LSA-R.S. 10:3-110(d). The old and new statutes are substantively the same.
[6] Our ruling on the duty issue renders moot the other assignments raised by third party plaintiffs.